**Clifford WATSON, et al., Plaintiffs,**

**v.**

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

Civ. No. C–1–85–1301.

United States District Court, S.D. Ohio, W.D.

June 23, 1986.

**346**

John Schrider, Jr., Cincinnati, Ohio, for plaintiffs.

Nicholas Pantel, Cincinnati, Ohio, Gerald Simmons, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on plaintiffs' Motion for Summary Judgment against the United States Department of Housing and Urban Development (HUD) (doc. no. 18), and HUD's Motion for Summary Judgment against plaintiffs. (Doc. no. 10) Upon consideration of the motions, their supporting memoranda, and exhibits, both motions are granted in part and denied in part.

In ruling on a motion for summary judgment, the narrow question that must be decided is whether there is no genuine issue as to any material fact thereby entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court cannot try issues of fact on a summary judgment motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

## I. INTRODUCTION

Plaintiffs and HUD are in fundamental agreement regarding the facts. Defendant Reid's Valley View Manor #2 (Valley View) is the owner of Walker Apartments, a 26–unit housing project financed under a federally insured, low-interest loan. *See* 24 C.F.R. pt. 221 (1985). As such, Walker Apartments is eligible for the federal government's section 8 housing program. The objective of that program is to aid "lower-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). Valley View participates in the program through a Housing Assistance Payments Contract (HAP contract) with HUD. Under the contract, HUD agrees to

subsidize the rent of the owner's section 8 tenants. The subsidy is paid monthly and essentially consists of the difference between what HUD determines is a fair rent for the apartment and what HUD determines the family can afford to pay for rent. (Doc. no. 10, exhibit 1) The responsibility for selecting tenants and certifying them for section 8 aid is put on the owner. *Id.* §§ 12, 13. The owner is guided in this task by various HUD regulations and guidelines. *Id.*

While the focus of section 8 is on families, a single person can qualify for assistance if he is 1) at least 65 years old, 2) disabled, 3) handicapped, 4) a displaced person, 5) the remaining member of a tenant family, or 6) otherwise qualified under HUD regulations. 42 U.S.C. § 1437a(b)(3). HUD has exercised its discretion under the sixth category above by promulgating regulations authorizing assistance to single persons in two additional instances in which the owner is holding HUD-insured mortgages:

> (i) the project is one which has been or is intended to be converted to a low-income or lower-income project assisted under the Act, and (A) Single Persons are residing in the project at the time of conversion, or (B) the Director determines that the project is not suitable for occupancy by the elderly, disabled, or handicapped because of design or location; or (ii) the project is a low-income or lower-income project receiving assistance under the Act and is experiencing sustained vacancies as evidenced by one or more units having been vacant for a period of sixty days or more and no eligible applicants other than Single Persons are available.

24 C.F.R. § 812.3(b)(1) (1985).

Plaintiffs are three unemployed, single males receiving general relief from Hamilton County, Ohio. They were certified by a former manager of Walker Apartments as eligible for section 8 assistance and accepted as tenants. After they had lived there for several months, HUD performed a routine check of their applications and concluded that seven of Walker Apartments' ten-

ants had been incorrectly certified as eligible for section 8 assistance. This error resulted in HUD overpayments to Valley View of $22,609. On April 30, 1985, HUD sent a letter to defendant RTS Associates, Inc., the current manager of Walker Apartments, notifying it of the tenants' ineligibility and insisting that the overpayments be returned. (Doc. no. 10, exhibit 5)

On May 10, 1985, RTS wrote to the tenants informing them of HUD's determination and giving them seven days to tender proof of their eligibility. If no proof was tendered, plaintiffs would have to vacate the apartments by June 10. (Doc. no. 18, exhibit 13) Plaintiffs responded with this suit against HUD, Valley View, and RTS.

## II. PLAINTIFFS' MOTION

Plaintiffs' Motion for Summary Judgment presents two basic claims against HUD. First, HUD deprived them of a property interest without due process in contravention of the Fifth Amendment. Second, HUD's decision to decertify them was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### A. DUE PROCESS

#### 1. Clifford Watson

The due process clause of the Fifth Amendment states that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. HUD does not contest that there exists here governmental action sufficient to invoke the guarantees of the Fifth Amendment. The first question, then, is whether there exists a property or liberty interest recognized by the constitution. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Plaintiffs claim a property interest in their continued receipt of section 8 housing subsidies.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation

of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those interests upon which people rely in their daily lives, reliance that must not be arbitrarily determined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Watson's claim of entitlement fits easily within the above criteria. Like the welfare recipients in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), Watson's claim to housing benefits is grounded in the statutes and regulations defining his eligibility. He claims to be disabled or handicapped, and those claims, if proven, establish his eligibility. That eligibility, coupled with his present receipt of the assistance, creates a property interest.[1]

■ Once a property right has been established, the next task is to determine what process must accompany the deprivation of that right. *Davis v. Mansfield Met-*

*ro. Housing,* 751 F.2d 180 at 184 (6th Cir. 1984). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). This concept is flexible and should be adapted to the situation at hand. *Id.* at 334, 96 S.Ct. at 902. Whether specific procedures satisfy the dictates of due process depends upon how well they balance the private and public interests involved. Factors in the equation are the nature of the private interest, the risk of erroneous deprivation posed by the procedures, the probable value of additional or substitute procedural safeguards, and the nature of the government's interest, including the fiscal and administrative burdens that additional and substitute procedural requirements would entail. *Id.* at 335, 96 S.Ct. at 903.

■ HUD apparently has no formal procedures for terminating section 8 benefits. (Doc. no. 18, exhibit 17) Nevertheless, HUD claims that Watson received constitutionally sufficient notice and opportunity to be heard when RTS informed him of HUD's eligibility determination and provided him seven days to prove he was elderly, disabled, or handicapped. (Doc. no. 18, exhibit 13) The Court holds that this procedure is constitutionally inadequate. Because Watson's income is $143 a month, his interest in housing assistance is great. (Doc. no. 18, exhibit 2) Because Watson was incorrectly qualified for section 8 assistance, HUD's use of his application as the basis for its termination decision makes the risk of erroneous deprivation high. Additional procedural safeguards would greatly enhance HUD's ability to correctly assess the extent of Watson's disability or handicap. Finally, while HUD's interest in efficient administration of section 8 assist-

---

**1.** There is some question as to whether eligibility alone would create a property interest in section 8 assistance. *Compare Eidson v. Pierce,* 745 F.2d 453 (7th Cir.1984) (eligibility alone does not create property interest) *with Ressler v. Pierce,* 692 F.2d 1212 (9th Cir.1982) (eligibility alone does create property interest).

ance is also great, it does not outweigh the other factors that call for increased procedural safeguards.

The Court does not express an opinion as to the precise process to be afforded Watson. The Court would only note that HUD should be guided by the procedures used by the Department of Health and Human Services in making the same disability terminations, *see* 42 U.S.C. § 1437a(b)(3)(A), and the opinions of United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

### 2. Vincent Hill and Willie Toney

■ Hill and Toney are in a different posture from Watson. They admittedly do not qualify for any of the specific categories of eligibility established by 42 U.S.C. § 1437a(b)(3) or 24 C.F.R. § 812.3(b)(1). Instead, they claim eligibility by virtue of their current receipt of the assistance, the policy behind section 8, and HUD's practice of handling single persons. Borrowing from the terminology of *Board of Regents v. Roth,* none of the grounds cited by Hill and Toney above qualifies as rules are understandings sufficient to create a property interest. 408 U.S. at 577, 92 S.Ct. at 2709.

■ A property interest must be based on a legitimate claim of entitlement. 408 U.S. at 577, 92 S.Ct. at 2709. Hill's and Toney's claims are not legitimate. They qualified for section 8 assistance through an illegitimate act of Valley View's then apartment manager. An illegitimate act cannot create a legitimate entitlement. Congress and HUD are quite specific as to the categories of single person they intend to assist through section 8 assistance. *See* 42 U.S.C. § 1437a(b)(3); 24 C.F.R. § 812.-3(b)(1). Unlike Watson, who has a legitimate claim to eligibility for one of those categories, Hill an Toney do not. All they have is a desire that HUD grant them an exception to the statutory scheme limiting participation to well-defined eligibility categories. This desire for an exception does not rise to the level of a legitimate claim of entitlement. The Court does not believe that the Fifth Amendment was intended to force agencies to hold hearings before depriving persons of benefits for which they admittedly do not qualify.

Nor does the policy behind section 8 constitute a rule or understanding that creates a property right. Section 8's policy is to provide housing assistance to lower-income families and certain well-defined categories of single persons. 42 U.S.C. §§ 1437, 1437f(a), 1437a(b)(3). Plaintiffs can point to no authority holding that the policy behind section 8 is to assist single persons in general or incorrectly certified single persons in particular.

Finally, Hill and Toney cite numerous instances in which HUD is alleged to have made exceptions to its regulations and allowed single persons like themselves to receive section 8 assistance. Of all the instances cited by Hill and Toney, the Court is convinced that only one does not fit within the letter and spirit of the regulations. (Doc. no. 18, exhibit 10) This single exception, however, does not constitute a regulation, and under 42 U.S.C. § 1437a(b)(3)(D) it would take a regulation of HUD to establish an entitlement in Hill or Toney. Nor does a single exception establish an understanding that would convey a property right to Hill or Toney. Thus, Hill's and Toney's claims do not qualify as rules or understandings creating property interests.

### B. 5 U.S.C. § 706

■ Under the Administrative Procedure Act (APA), an agency action may be held unlawful and set aside if a court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136

(1971). The Court is to decide only whether the agency's decision was based on a consideration of relevant factors and whether there has been a clear error of judgment. *Id.; National Steel Corp. v. Gorsuch,* 700 F.2d 314, 320 (6th Cir.1983).

Plaintiffs contend that two of HUD's actions should be set aside under § 706(2)(A): the decision to terminate plaintiffs' benefits, and the refusal to consider alternatives to termination. (Doc. no. 18 at 4–9, 13–15)

### 1. Clifford Watson

Plaintiff Clifford Watson claims to qualify for section 8 assistance by virtue of a disability or a handicap. 42 U.S.C. § 1437a(b)(3)(A). The claim of disability was noted on his application, but he did not present, nor was he asked to provide, documentation to support the claim. After reviewing the application, HUD decided Watson was not disabled. Evidence of the manner in which HUD reached that decision is not before the Court. RTS gave Watson seven days to provide evidence of his disability, but it was not until four and a half months after this suit was filed that Watson tendered the requested evidence. HUD is yet to rule on this evidence.

Watson would like this Court to rule that he is disabled. In light of the Court's prior ruling that Watson receive a hearing prior to termination of his assistance, this issue is moot. Until HUD makes its decision on disability, there is no agency action to review, and HUD has presented no additional authority beyond the APA that would grant this Court the power to decide Watson's disability status. Therefore, plaintiffs' motion is denied as to the issue of Watson's disability.

### 2. Vincent Hill and Willie Toney

Like the analysis of Hill's and Toney's due process rights, a big factor in APA review of their claims is the fact that they do not explicitly fall under any of the categories of eligible singles listed in 42 U.S.C. § 1437a(b)(3) or 24 C.F.R. § 812.3(b)(1). Nevertheless, they claim that these catego-

ries are not exhaustive because HUD has granted exceptions for similarly situated singles in the past, and that HUD should exercise the same discretion in their cases.

■ Plaintiffs' syllogism contains an incorrect major premise. The categories set up by the statute and regulations are exhaustive. Congress has clearly defined those singles that it wishes to assist through the section 8 program. 42 U.S.C. § 1437a(b)(3). In addition, it has granted HUD power to promulgate regulations qualifying additional singles. *Id.* § 1437a(b)(3)(D) This HUD has done, and plaintiffs do not attack the validity of those regulations. Since plaintiffs do not qualify under the regulations or the statute the inquiry ends there. The single example, mentioned above, in which HUD granted an exception to a single individual similarly situated to Hill and Toney does not rise to the level of a *de facto* HUD regulation as required by § 1437a(b)(3)(D). Nor does it mean that HUD acted arbitrarily, capriciously, abused its discretion, or otherwise acted not in accordance with law when it decided not to deviate from its regulations for plaintiffs. Consequently, plaintiffs motion for summary judgment on this point is denied.

■ In a different vein, plaintiffs argue that HUD abused its discretion by refusing to consider alternatives to termination. They cite cases in which Courts have held that part of the *Overton Park* requirement that an agency base its action on a consideration of relevant factors is that an agency reach its final determination only after considering alternatives. *See Russell v. Landrieu,* 621 F.2d 1037 (9th Cir.1980); *Silva v. East Providence Housing Authority,* 565 F.2d 1217 (1st Cir.1977).

Those case arose in far different contexts from the case at bar. Here, the statutory scheme of the National Housing Act limits HUD's alternatives to the categories of eligibility set forth in the Act and the regulations. While it is conceivable that HUD could grant Hill and Toney an *ad hoc* exception to this statutory scheme,

it certainly is not compelled to do so nor would refusing to do so be arbitrary, capricious, an abuse of discretion, or not in accordance with law. Accordingly, HUD's actions satisfy the review standards of the APA.

### C. PLAINTIFFS' OTHER THEORIES OF RECOVERY

Plaintiffs argue in the alternative that they are entitled to section 8 assistance by virtue of being third-party beneficiaries to the HAP contract between HUD and Valley View. *See Ashton v. Pierce,* 716 F.2d 56, *modified,* 723 F.2d 70 (D.C.Cir.1983); *Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir. 1981). This theory adds nothing to their case. The primary beneficiaries of the HAP contract are, of course, those persons eligible for section 8 assistance. Watson's eligibility will be determined at the hearing mandated by this order. If found eligible, or if the eligibility requirements are waived, he will get his benefits and this issue will be moot. If he is found to be ineligible, that determination will be reviewable under 5 U.S.C. § 706. If HUD's ineligibility decision is upheld, Watson will, by definition, not be a third-party beneficiary of the HAP contract. If HUD is reversed, Watson will get his benefits and this issue will be moot. As to Hill and Toney, they are not eligible for section 8 assistance and cannot, therefore, be third-party beneficiaries of the HAP contract. Thus, plaintiffs' motion cannot be sustained on this theory.

Finally, plaintiffs ask the Court to exercise its discretionary equitable powers to protect "innocent victims" from the "misfeasance" of the defendants, "notwithstanding any apparent regulatory authority to the contrary." The Court declines plaintiffs' request for such extraordinary relief.

### III. HUD'S MOTION

HUD moves for summary judgment on the theory that it owes no legal duty to plaintiffs because it bears no legal relationship to them. HUD has a contract with Valley View and has delegated all responsibility for dealing with tenants to Valley View. (Doc. no. 10, exhibit 1, §§ 12, 13) 24 C.F.R. § 886.119(a) (1985). HUD has no contract with plaintiffs nor provides any assistance directly to them.

Nevertheless, HUD made the decision to terminate plaintiffs' benefits. That decision to terminate must be made in compliance with the constitution and the relevant statutes, and is governed by the APA. Those sources provide HUD's legal duty. Since HUD satisfied its legal duty to Hill and Toney, its motion for summary judgment is granted as to them for the reasons outlined above. Since HUD failed to provide Watson with his full constitutional rights, its motion is denied as to him.

### IV. CONCLUSION

Plaintiffs' Motion for Summary Judgment is granted to the extent that the Court makes the following declarations: 1) Watson has a property interest in his section 8 assistance, 2) HUD violated the Fifth Amendment by failing to provide Watson with a meaningful opportunity to be heard prior to depriving him of a property right. The remainder of plaintiffs' motion is denied.

HUD's Motion for Summary Judgment is granted to the extent that Hill's and Toney's claims against it are dismissed. The remainder of HUD's motion is denied.

This order expresses no opinion regarding the rights and duties of defendants Valley View and RTS.

IT IS SO ORDERED.