**Joseph A. BOVA, Plaintiff,**

v.

**AMERICAN CYANAMID CO., et al., Defendants.**

**No. C–2–82–659.**

United States District Court, S.D. Ohio, E.D.

May 8, 1987.
Memorandum and Order June 10, 1987.

Robert G. Palmer, Columbus, Ohio, for plaintiff.

Edgar A. Strause, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GRAHAM, District Judge.

### FINDINGS OF FACT

1. Defendant American Cyanamid Company is a corporation with headquarters located in Wayne, New Jersey. Lederle Laboratories, Pearl River, New York, is a division of American Cyanamid. Defendant W.P. Brown is the administrator of

American Cyanamid's employee benefit plans.

2. American Cyanamid maintains three employee benefit plans. The Personal Protection Program provides medical benefits, life insurance, and weekly disability payments for a period of up to twenty-six weeks. The Long Term Disability Plan allows for benefits in the case of an employee who has been disabled for a period of at least twenty-six weeks. Long term disability benefits are available for two years, or for a longer, term coextensive with the duration of the disability. The long term disability benefits are diminished by the amount of social security and worker's compensation payments and by retirement benefits paid under American Cyanamid's retirement plan. The Employees Retirement Plan provides a retirement pension for employees who retire at age sixty-five and who have at least five years of service. The Plan permits early retirement at any time after age fifty-five if the employee's age plus years of service equal at least sixty-five. Upon early retirement, an employee's benefits are reduced by three percent for each year that his early retirement date falls short of his normal retirement date, or, in the case of an employee with twenty years of continuous service, his sixty-second birthday.

3. The Retirement Plan also includes total and permanent disability benefits. An employee qualifies for total and permanent disability benefits if he is unable, because of bodily injury or disease, to engage in any occupation or employment for substantial remuneration or profit, his condition has existed continuously for at least six months, and his condition is expected to continue to at least age sixty-five. Total and permanent disability benefits are reduced by the amount of any worker's compensation benefits and, depending upon the method of calculation used, by fifty percent of any benefits under social security. A person who qualifies for these benefits remains an employee and cannot receive pension benefits simultaneously. In the event that an employee recovers from his disability and returns to active service, his pension credits begin to accrue again on the date of his return, he retains all credits earned prior to his disability and the entire period of total and permanent disability is counted as continuous service. Health and life insurance premiums are paid by the plan under the total and permanent disability provisions.

4. Summary information concerning the plans is distributed to new employees, to current employees upon request or when any changes are made in the plan. Employees are also sent annual reports concerning their current personal status as to benefits payable under the plans. Employees were instructed to address any questions concerning the plans to their personnel division. The complete plan description contains certain information concerning benefits and the process of appeal from denial of benefits not found in the plan summaries.

5. The retirement plan provides that if any claim for benefits is denied in whole or in part, the administrator shall notify the claimant in writing within ninety days after the submission of such claim. The ninety-day period may be extended for an additional ninety days upon written notice to the claimant. The written notice of denial shall contain the specific reason for the denial, the specific provision of the plan on which the denial is based, a description of any additional information required to perfect the claim, an explanation of why such information is necessary, and an explanation of the appeals process. Within sixty days the claimant may request a review by the administrator of the denial of the claim. The administrator's decision must be rendered no later than one hundred and twenty days after receipt of the request for review, must be in writing and must include the specific reasons for the denial.

6. Plaintiff commenced his employment with Lederle Laboratories in 1948 and had slightly over twenty-nine years of continuous service with the company as of June, 1975. Plaintiff's job entailed the sale of pharmaceutical products to doctors and pharmacies within his assigned territory. Plaintiff was vested under the terms of all

three American Cyanamid employee benefits plans.

7. Plaintiff was injured in a work-related automobile accident in November, 1974. He sustained additional injuries in a second work-related automobile accident in March, 1975. He was hospitalized and underwent a cervical laminectomy in April, 1975. Plaintiff returned to work two weeks after surgery and continued to work until June 10, 1975, at which time he was placed on medical leave by the company physician, Dr. Dolor. He never returned to active status with the company.

8. Plaintiff's physical condition deteriorated through 1976 and into 1977. In September of 1977 he was again hospitalized for back surgery.

9. Plaintiff received weekly benefits under the Personal Protection Program for the maximum period allowed, twenty-six weeks.

10. Plaintiff received benefits under the Long Term Disability Plan from December, 1975 to July 31, 1978. During that time, plaintiff's long term disability benefits were for the most part completely offset by his worker's compensation, and social security income. During certain months, the company was unaware that plaintiff was also receiving social security benefits, and paid long term disability benefits to plaintiff, resulting in an overpayment of long term disability benefits in the amount of $4,295.90. Plaintiff's long term disability benefits terminated as of July 31, 1978, because the benefits were completely offset by plaintiff's social security and worker's compensation benefits. Since then, the amount of long term disability benefits he would have received has been completely offset by other benefits.

11. Under company policy, two years was the maximum period of time allowed for a continuous medical leave of absence from active service with the company. Plaintiff was advised by a letter dated April 18, 1977 from Mr. Blasko, manager of benefits and pensions for Lederle Laboratories, that the maximum leave of absence period of two years would expire in June of 1977. Plaintiff was provided with an application form for total and permanent disability benefits. The application was returned to Mr. Blasko by Arthur Thomas, plaintiff's attorney, in May of 1977 with the indication that medical reports would follow.

12. Plaintiff's employment was terminated on June 10, 1977 pursuant to the employer's standing policy. At that time, plaintiff had been on continuous leave of absence for two years.

13. The determination of eligibility for total and permanent disability benefits is made by the Central Medical Committee, composed of William Gerristead, supervisor of benefits, and Dr. Dolor, company physician for American Cyanamid.

14. Mr. Gerristead considered various medical data in connection with plaintiff's application for total and permanent disability benefits.

He reviewed a report by Dr. Reynolds to the Industrial Commission of Ohio dated January 24, 1978, which indicated that plaintiff at that time had a permanent partial impairment of seventy-five percent. Dr. Reynolds expressed reservations as to whether plaintiff would ever be able to return to some type of employment activity.

Mr. Gerristead also received reports from Dr. Joseph Ridgeway, plaintiff's attending physician. In January and March of 1977, Dr. Ridgeway concluded that plaintiff was currently disabled and unable to return to work. On January 10, 1978, Dr. Ridgeway wrote to the Bureau of Worker's Compensation and expressed the opinion that total disability would continue to April 1, 1978, but that plaintiff might return to light work by June of 1978. He revised that opinion in a report dated March 16, 1975, stating that plaintiff would be able to resume light work in September, 1978 and would probably be unable to resume regular work. Dr. Ridgeway indicated in his April 18, 1978 report to American Cyanamid that plaintiff's disability was total and permanent. Dr. Ridgeway's report of July 12, 1978 to the Bureau of Worker's Compensation stated that plaintiff was perma-

nently and totally disabled for sustained remunerative employment.

15. Mr. Gerristead also received a letter of March 14, 1977 written by Dr. Warren Leimbach to the Social Security Offices expressing the opinion that plaintiff was not capable of any work activity at that time.

16. Mr. Gerristead determined that plaintiff did not qualify for total and permanent disability benefits. He based this decision on the fact that the medical evidence as he perceived it was conflicting, in that Dr. Ridgeway at times indicated that plaintiff might return to light work. Mr. Gerristead also considered the fact that plaintiff had made inquiries concerning the possibility of returning to active status with the company on a part-time basis. Mr. Gerristead applied the standard that plaintiff could not qualify for benefits unless he was unable to work at all. This was not the standard set forth in the plan. Mr. Gerristead's testimony reveals the following:

Q. Now, looking at the first requirement, and if you need Joint Exhibit B, you may have it, but I think it is the same in that regard on the application. In paragraph 1, the standard is whether the person can engage in any occupation for substantial remuneration or profit, correct?

A. Yes.

Q. Your testimony to Mr. Schuster was that precluded any job?

A. Yes.

Q. What does substantial remuneration or profit mean to you, sir?

A. Any job.

Q. Any job?

A. Yes.

Q. What does the word substantial mean to you?

A. In other words, it wouldn't be just a menial job, it would have to be a job—

Q. So he could work on a menial job and work minimum wage? Could he sell hamburgers at McDonald's? Would

that be substantial remuneration or profit?

A. No.

\*    \*    \*    \*    \*    \*

Q. The question basically is what is nonsubstantial remuneration or profit under this plan?

A. It would have to be a menial job, nothing to maintain himself.

Q. But in fact your testimony is that if they qualify for any job, you wouldn't give them T P and D?

A. That is right.

Q. But that is not what the plan says, is it?

A. That is right.

17. Mr. Gerristead notified Mr. Blasko by memo dated July 12, 1978 that plaintiff was not eligible for total and permanent disability benefits. Although Mr. Gerristead indicated that upon receipt of Dr. Ridgeway's report to the Bureau of Worker's Compensation of that same date, plaintiff's application was placed on a pending status, there was no evidence that Mr. Gerristead gave the application any further consideration. The application was reviewed by Mr. Brown, the plan administrator, in response to a February 11, 1982 letter from plaintiff's counsel requesting reconsideration of the claim. Mr. Brown, by letter dated May 10, 1982, made no change in that determination.

18. Plaintiff received no timely formal written notice of the denial of his application for total and permanent disability benefits. However, based upon the circumstances, it is probable that he was notified of that fact by Mr. Blasko. Plaintiff and Mr. Blasko communicated by telephone concerning the application on several occasions. Mr. Gerristead stated that it would have been Mr. Blasko's responsibility to notify plaintiff of the decision. Plaintiff made no reference to his application for total and permanent disability benefits in his correspondence with the company after July of 1978, and the letter sent by his attorney, John Huntley, to Mr. Blasko on July 28, 1978, mentions only long term disability and early retirement benefits.

19. Mr. Huntley in the aforementioned letter of July 28, 1978, requested copies of the retirement and long term disability plans on behalf of plaintiff. Mr. Gerristead responded by letter on August 16, 1978 by acknowledging receipt of the inquiry and reporting that the information would be included with his letter on long term disability benefits. However, the plan information was not sent to plaintiff or Mr. Huntley with that letter. The plans were not provided until May 4, 1981, when copies were sent to plaintiff's counsel, representing a delay of almost three years. While plaintiff already possessed some information about the various employee plans, the complete retirement plan description contained information about the total and permanent disability benefits not found in the plan summary, including the fact that employee status was retained while receiving those benefits.

20. Plaintiff wrote a letter to James Affleck on November 13, 1978 to request a limited work assignment or an increase in salary which would facilitate early retirement. Plaintiff was notified by Mr. Brown on December 22, 1978 that no part-time employment opportunities had been found, and was sent an application for early retirement.

21. Plaintiff elected early retirement on March 5, 1979. Retirement benefits were awarded retroactive to October 1, 1978.

22. Since retirement, plaintiff has continued to the present time to receive social security and worker's compensation disability benefits. Those benefits are not offset against plaintiff's retirement income. As of March 31, 1987, plaintiff will have received a total of $40,162.56 in gross early retirement benefits. Plaintiff is responsible under the early retirement provisions for paying the premiums on the optional insurance coverage offered by the plan, at a cost to plaintiff of $8,489.25 to date.

23. If plaintiff had been awarded total and permanent disability benefits, the cost of insurance would have been paid by the plan. However, in plaintiff's case, the monthly disability benefits payable would have been completely offset by the worker's compensation benefits received by plaintiff. Therefore, no total and permanent disability benefits would have been paid to plaintiff up to the present time.

24. Plaintiff would have retained his employee status while receiving total and permanent disability payments.

25. Under the plan terms he could not receive both total and permanent disability benefits and retirement benefits at the same time. Therefore, if plaintiff were deemed retroactively to be on total and permanent disability status, he would have received an overpayment of $31,673.31, calculated by subtracting the credit for insurance premiums that he would not have had to pay from the amount of gross early retirement benefits paid to him since October 1, 1978.

26. The evidence is devoid of any indication that plaintiff, since incurring his disability, has recovered sufficiently to return to full-time employment. Plaintiff is now sixty-four years old. Plaintiff has been continuously unemployed since the commencement of his leave of absence from Lederle Laboratories. He has continued to receive disability benefits from social security and worker's compensation. The Industrial Commission of Ohio found in May of 1982 that plaintiff was still permanently and totally disabled, and that compensation would continue absent a change in plaintiff's condition. American Cyanamid would require a physician's release before considering plaintiff's return to full-time employment. No doctor has released plaintiff to go back to work. Plaintiff was unable to say when, if ever, it would have been possible for him to return to employment.

27. On June 9, 1982, plaintiff filed a complaint under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.:* asserting that he was wrongfully denied total and permanent disability benefits, and that the plan administrator, Mr. Brown, failed to provide plan information. Defendant American Cyanamid filed a counterclaim for the overpayment of long term disability benefits.

## CONCLUSIONS OF LAW

1. This case is brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Plaintiff claims a wrongful denial of total and permanent disability benefits and requests an award of damages against defendant Brown, the plan administrator, under 29 U.S.C. § 1132(c). Defendant American Cyanamid has counterclaimed for an overpayment of benefits under the Long Term Disability Plan.

2. The standard which applies to the review of an administrator's decision to deny benefits is whether the denial was arbitrary and capricious. *Norman v. United Mine Workers of America Health and Retirement Funds,* 755 F.2d 509 (6th Cir. 1985); *Van Gunten v. Central States Southeast and Southwest Areas Pension Fund,* 672 F.2d 586 (6th Cir.1982). A court may take into account any procedural violations in determining whether the administrator acted in an arbitrary and capricious manner or whether the decision was made in bad faith, was erroneous as a matter of law, or was unsupported by substantial evidence. *Blakeman v. Mead Containers,* 779 F.2d 1146 (1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984).

3. The court finds that the denial of benefits in this case was arbitrary and capricious. Mr. Gerristead, in reviewing plaintiff's application, applied a different standard from that provided for by the plan. He concluded that plaintiff had not shown that he was incapable of any employment, and did not consider inability to engage "in any occupation or employment for substantial remuneration or profit" as required by Article Six, Section E(1) of the Employees Retirement Plan. By employing a standard not required by the pension plan, Mr. Gerristead acted in an arbitrary and capricious manner. *Morgan v. Mullins,* 643 F.2d 1320 (8th Cir.1981).

4. The decision was also arbitrary and capricious because substantial evidence of plaintiff's disability had been presented. None of the medical reports expressed the opinion that plaintiff would ever be able to return to full-time employment. There is no indication that the possibility of his return to light work would yield "substantial remuneration or profit". Mr. Gerristead took no further action on the application even after receiving Dr. Ridgeway's report of July 12, 1978 that plaintiff was permanently and totally disabled for sustained, remunerative employment.

5. The consideration of plaintiff's application was replete with procedural violations. While the delay in processing the application was due in part to plaintiff's tardiness in submitting medical reports, the decision was reached over a year after the submission of the application. The terms of the plan provide for a review process of at most one hundred and eighty days. No written notice with the required supporting reasons for the denial of benefits and notice of appeal procedures was sent to plaintiff, thus contributing to a denial of plaintiff's right to a timely appeal from the decision. Plaintiff's efforts were further hampered by the fact that he did not receive a copy of the retirement plan he requested in August of 1978 until almost three years later. That plan description would have informed plaintiff of his right to appeal. These procedural deficiencies further support this court's conclusion that the decision of the Central Medical Committee was arbitrary and capricious. *Blau v. Del Monte Corp., surpa.* Judgment is awarded to plaintiff on the denial of benefits claim.

6. A plan participant or beneficiary who brings suit under 29 U.S.C. § 1132 to redress a denial of benefits may recover for benefits owed, but cannot recover extra-contractual compensatory and punitive damages. *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302 (9th Cir.1986); *Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419 (4th Cir.1985), cert. denied — U.S. ——, 106 S.Ct. 2892, 90 L.Ed.2d 980; *Sommers Drug Store Co. Employment Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456 (5th Cir.1986).

7. Upon a finding that the decision to deny benefits was arbitrary and capricious, the court may remand the matter to the company for a new determination of the employee's claim. *Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388 (7th Cir.1983). The court recognizes that in light of the fact that any total and permanent disability benefits have been and continue to be completely offset by plaintiff's worker's compensation benefits, it may not be to plaintiff's advantage to have a total and permanent disability determination made at this time. However, the court feels that plaintiff should be allowed to make that choice. The court therefore orders that plaintiff, if he so desires, may elect to resubmit his application for total and permanent disability benefits to American Cyanamid. If plaintiff so elects, then American Cyanamid shall promptly consider the application within the time limitations provided for by the Employees Retirement Plan. If benefits are denied, the decision shall be in writing and shall include reasons for the denial as required by the plan terms. If the request for total and permanent disability benefits is allowed, and if plaintiff elects to receive those benefits at the present time, he cannot simultaneously receive an early retirement benefit under the terms of the plan. Furthermore, the court in such an event would have to fashion a plan equitable to all the parties for the repayment of the $31,673.31 in early retirement benefits which plaintiff has already received but would not be entitled to under the Total and Permanent Disability Plan. Plaintiff is hereby given a period of thirty days from the date of this order to notify the court as to his intentions in regard to reapplying for total and permanent disability.

8. Plaintiff has requested an award of damages representing his salary for the years following the denial of his application for total and permanent disability benefits under the theory that if he had received a total and permanent disability award, he would have retained his employee status and could possibly have returned to work. The court finds that plaintiff has failed to prove damages in that regard.

No evidence was presented which would support a finding that plaintiff had recovered sufficiently at any time since his accidents to return to his employment with the company. To the present time, plaintiff has continuously received disability payments from social security and worker's compensation. He has never received a doctor's release to return to work. Plaintiff was unable to say when, if ever, he could have returned to his former job at American Cyanamid. Plaintiff did not prove that he would ever have been able to resume full-time employment. Part-time employment with the company was not available, and the company was under no obligation to provide such employment to plaintiff. In any event, plaintiff did not prove that he would have been able to return to part-time work.

9. Plaintiff has requested an award against Mr. Brown as plan administrator under 29 U.S.C. § 1132(c), which permits a penalty of up to one hundred dollars a day for each day beyond thirty days in which the administrator fails or refuses to comply for a request for information which the administrator is required to provide under ERISA.

10. An administrator is required to provide upon written request of any participant or beneficiary a copy of the latest updated summary plan description, plan description, or other instruments under which the plan is established or operated. 29 U.S.C. § 1024(b)(4).

11. The fact that the administrator was acting in good faith is not a defense to the failure to provide information. *Lee v. Dayton Power & Light Co.*, 604 F.Supp. 987 (S.D.Ohio 1985). Prejudice to the beneficiary may be considered but is not required. *Bemis v. Hogue*, 635 F.Supp. 1100 (E.D.Mich.1986).

12. On July 28, 1978, plaintiff, through his attorney, requested in writing a copy of the Retirement Plan. He did not receive a copy of the plan until May 4, 1981, almost three years later. Plaintiff was absolutely entitled to the requested information. Since the complete plan de-

scription contained much more information concerning the total and permanent disability benefits than did the plan summary it is likely that this information would have been of assistance to plaintiff in considering his benefit options and in seeking review of the denial of total and permanent disability benefits. No reasonable explanation was offered as to why the requested materials were not timely sent. The failure of plaintiff to address his request to Mr. Brown personally is not a defense since the plan summary instructs employees to direct inquiries to their personnel or employee benefits department. Plaintiff's written request was appropriately directed to Mr. Blasko, Benefits and Pensions Manager for Lederle Laboratories.

The court further notes that the failure to timely provide a copy of the requested plans is but one of a series of procedural errors on the part of American Cyanamid's employee benefits management and personnel. Plaintiff received no formal notice when he was terminated by the company. The Central Medical Committee, made up of Mr. Gerristead and Dr. Dolor, applied an erroneous standard in reviewing plaintiff's application for total and permanent disability benefits. Plaintiff received no written decision outlining the reasons for denial of benefits, and was not advised of his appeal rights. Thus, on several occasions, defendant Brown's subordinates displayed a careless indifference to the rights of plaintiff in this case.

The court therefore concludes that it is appropriate in this case to order the payment of a penalty pursuant to 29 U.S.C. § 1132(c) by defendant Brown to plaintiff in the amount of $10,000 for failure to timely provide information concerning the employee benefit plan as requested by plaintiff.

13. Defendant American Cyanamid has proved an overpayment of long term disability benefits to plaintiff in the amount of $4,295.90. Defendant American Cyanamid, on behalf of the American Cyanamid Long Term Disability Plan, is awarded judgment on the counterclaim in the amount of $4,295.90 plus interest.

14. Reasonable attorney's fees and costs are hereby awarded to plaintiff against defendant American Cyanamid pursuant to 29 U.S.C. § 1132(g)(1).

## MEMORANDUM AND ORDER

Defendants have filed an application requesting this court to correct the amended entry of judgment filed in the present case.

The record reveals that plaintiff's first amended complaint filed on June 26, 1985 is comprised of three counts. Count One alleges various violations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* Counts Two and Three allege breach of contract and negligent infliction of serious emotional distress. This court, by decision rendered on March 6, 1987, declined to exercise jurisdiction over the pendent state claims stated in Counts Two and Three and dismissed those counts. This court further ruled that recovery of extra-contractual and punitive damages as prayed for in Count One was precluded, and that summary judgment on plaintiff's Section 1132(c) claim was appropriate as to defendant American Cyanamid Company. The remainder of Count One was tried to the court on March 25, 1987.

This court, pursuant to a decision filed on May 8, 1987, found that the denial of permanent and total disability benefits under the terms of American Cyanamid's Retirement Plan was arbitrary and capricious, and further found that defendant Brown, the plan administrator, violated the disclosure requirements of ERISA. A penalty of $10,000 was imposed upon defendant Brown. Attorneys fees and costs were also awarded to plaintiff against American Cyanamid Company. Defendant American Cyanamid was awarded judgment on the counterclaim in the amount of $4,295.90 plus interest.

In response to defendant's application, the court hereby orders the clerk to file a second amended judgment containing the following language:

It is ordered and adjudged that judgment is hereby awarded to the plaintiff on the denial of pension benefits claim for contractual damages contained in

Count One of the Amended Complaint against defendant American Cyanamid. Plaintiff may resubmit his application for permanent and total disability benefits, but any receipt of such benefits will be subject to such repayment of early retirement benefits pursuant to order of this court. Plaintiff is further awarded judgment on his Title 29, Section 1132(c) claim in the amount of $10,000.00 against defendant W. Perry Brown. Attorney's fees and costs are awarded to the plaintiff against defendant American Cyanamid. Also, judgment is awarded to defendant American Cyanamid on behalf of American Cyanamid Long Term Disability Plan, on the counterclaim against plaintiff in the amount of $4,295.90 plus interest.

The court disagrees with the statement in defendants' application that plaintiff withdrew his ERISA claim by electing not to re-apply for total and permanent disability benefits. Plaintiff established by a preponderance of the evidence at trial that the denial of total and permanent disability benefits was arbitrary and capricious, in violation of the provisions of ERISA. Plaintiff in his amended complaint prayed for "such other and further relief as the court may deem just and proper." The court pursuant to its broad equitable powers under ERISA fashioned an equitable remedy appropriate to the circumstances of this case, and plaintiff made his choice among the alternatives offered under the terms of the court's order. Plaintiff, by making this election, did not thereby withdraw or abandon his ERISA claim. Plaintiff was awarded judgment on that claim and that judgment remains in full force and effect.

It is so ORDERED.