KENT et al., Appellees,

v.

CENTRAL BENEFITS MUTUAL INSURANCE COMPANY, Appellant.

[Cite as *Kent v. Central Benefits Mut. Ins. Co.* (1989), 61 Ohio App.3d 482.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–758.

Decided Feb. 9, 1989.

*Schottenstein, Zox & Dunn* and *Rick E. Marsh,* for appellees.

*Baker & Hostetler, Randall S. Rabe* and *Amy B. Soppel,* for appellant.

McCORMAC, Judge.

Plaintiffs-appellees, Melvin Kent and Elizabeth Kent, filed a complaint against defendant-appellant, Central Benefits Mutual Insurance Company, in the Franklin County Court of Common Pleas. The complaint stated that Elizabeth Kent was covered under a policy of insurance benefits issued by appellant to Elizabeth's mother, Betsy Kent. At the time of filing, Elizabeth Kent was undergoing treatment at the Menninger Foundation in Topeka, Kansas ("Menninger"). Appellees sought a determination by the court that the insurance policy issued by appellant to Elizabeth Kent's mother covered the medical bills Elizabeth Kent had incurred at Menninger and would incur in the future. According to the terms of the applicable insurance policy, if Elizabeth's treatment were medically necessary, as defined within the policy, then appellant would pay for the treatment. Appellant had denied appellees' preadmission certification application for treatment at Menninger and affirmed this denial when appellee pursued an appeal within Central Benefits.

The common pleas court ruled in favor of appellees and held that appellant was responsible to pay for the past inpatient hospitalization of Elizabeth Kent and for a one-year future period of inpatient treatment.

Appellant appeals the decision and raises the following two assignments of error:

"I. The trial court erred in failing to apply the arbitrary or capricious standard of review to Central Benefits' determination regarding the medical necessity of further in-patient psychiatric treatment.

"II. The trial court erred in its application of the arbitrary or capricious standard in this case; any determination by the trial court that Central Benefits' denial of further benefits for in-patient psychiatric treatment was arbitrary or capricious is against the manifest weight of the evidence presented at trial."

Elizabeth was born on August 4, 1968. At some point in time between the ages of two and five, Elizabeth began to fall from time to time for no apparent reason. When Elizabeth was seven or eight, she was diagnosed as having epilepsy. Besides epilepsy, Elizabeth suffers from two additional brain dysfunctions: myoclonic jerks, a form of seizures, and cerebellar ataxia, which manifests itself as an unsteady gait.

Elizabeth's parents, Melvin and Betsy Kent, were divorced in 1979. Around 1983 or 1984, Betsy Kent returned to Columbus, where Melvin Kent was also living. At around this time, Elizabeth developed a visible shakiness which affected her ability to walk. The rather sudden onset of Elizabeth's shakiness and related ambulatory problems was attributed in large part to emotional

problems. Consequently, Elizabeth was admitted to Harding Hospital on April 5, 1984.

Initially, appellant did not contest Elizabeth's hospitalization at Harding and paid her benefits. It was not until December 1984 that they determined that Elizabeth's stay at Harding was unwarranted on the grounds of medical necessity and informed the Kents that they would no longer pay for Elizabeth's hospitalization. Appellant did agree to allow Elizabeth to remain a few additional months at Harding to provide a transition period before Elizabeth's removal to a different facility. Elizabeth left Harding on March 7, 1985 and went to Bellefaire, a residential care facility for children and adolescents. Bellefaire has limited medical services and therapy. At Bellefaire, Elizabeth continued her high school education, which included vocational courses. Elizabeth stayed at Bellefaire until July 19, 1987, when she went to Menninger. Elizabeth's parents had decided to admit her into Menninger despite appellant's preadmission certification denial of coverage for Elizabeth to enter Menninger for treatment.

Elizabeth's admission note to Menninger stated that she was admitted with complaints of shakiness, exacerbated by anxiety or anger, and periods of sadness. Elizabeth has been described as overly dependent, oppositional, and unable to get along with others. The physicians at Menninger developed a treatment for Elizabeth which focused on her emotional problems.

■ This case involves a denial of benefits under a health care plan which falls within the ambit of the Employee Retirement Income Security Act of 1974 ("ERISA"), Section 1001 *et seq.*, Title 29, U.S.Code. In *Pilot Life Ins. Co. v. Dedeaux* (1987), 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39, the Supreme Court held that the civil enforcement provisions of ERISA preempt state law. *Id.*, 481 U.S. at 52, 107 S.Ct. at 1555, 95 L.Ed.2d at 50–51. Under ERISA, a reviewing court must uphold the decision of a plan administrator to deny benefits to a particular claimant unless the reviewing court finds that the denial was arbitrary and capricious. *Varhola v. Doe* (C.A.6, 1987), 820 F.2d 809, 813. The arbitrary and capricious standard is a narrow scope of review. *Motor Vehicle Manufacturers Assn. v. State Farm Mut.* (1983), 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443, 457–458. Under this standard, it is improper for a reviewing court to substitute its judgment for that of the plan administrator. *Id.* Rather, the reviewing court's role is to " 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " *Motor Vehicle, supra,* at 43, 103 S.Ct. at 2866–2867, 77 L.Ed.2d at 458; *United States v. Chotin Transp., Inc.* (S.D.Ohio 1986), 649 F.Supp. 356; *Watson v. U.S. Dept. of Housing & Urban Dev.* (S.D.Ohio 1986), 645 F.Supp. 345. In *Bova v.*

*American Cyanamid* (S.D.Ohio 1987), 662 F.Supp. 483, the court determined that the plan administrator's failure to apply the standard for qualifying for disability coverage contained within the applicable plan constituted arbitrary and capricious behavior. *Id.* at 489.

This court must ascertain whether or not the trial court applied the arbitrary and capricious standard of review and, if it did apply it, whether it properly applied it.

■ A review of a trial court decision is undertaken with the presumption that the trial court was correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276. An appellate court will not reverse the decision of a trial court on grounds of manifest weight of the evidence when some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579.

■ Included in the evidence before the trial court were letters written by appellant to Elizabeth Kent's parents and their attorney. These letters concerned appellant's denial of benefits for Elizabeth's treatment. In a letter dated July 16, 1987, appellant denied appellees' preadmission certification application for treatment at Menninger. The sole reason that appellant supplied for its decision to deny benefits was "[b]ased upon the medical information provided and a review by our physician consultant, it has been determined that the care and services to be rendered are excluded from coverage as specified in your subscriber contract due the chronic nature of the patient's condition."

The first paragraph of an August 4, 1987 letter from appellant to appellees' attorney sets forth the medical necessity standard of the group health care plan. The second paragraph stated, "[t]he issue is not that Elizabeth no longer needs psychiatric care, but that her previous history indicates that she is a candidate for long term care. The intent of our policy is to provide short term acute care. When renewal of the inpatient treatment plan cannot reasonably be expected to significantly improve the patient's condition, benefits are denied according to the terms of the medical necessity clause." The third paragraph refers to appellant's decision to deny benefits while Elizabeth was at Harding and states, in part, "[t]his prior action provides further indication of the chronic nature of the patient's condition which is not covered under the medical necessity clause."

While the second sentence of the second paragraph supports appellant's argument that it denied Elizabeth's preadmission certification application for

Menninger based on the appropriate level of care, the first sentence of the second paragraph and the language in the third paragraph indicate that, to the contrary, appellant denied coverage based upon the chronic nature of Elizabeth's problem.

On October 9, 1987, Philip Brown, Vice President of Provider Affairs for appellant, wrote to appellees' attorney regarding the appeal of the preadmission denial. Brown addressed the issue of whether appellant's denial of benefit coverage was consistent with the contractual language of the plan. Brown began with a general discussion of medical necessity as defined in the plan. This included appellant's reasoning for its position, as stated in the definition of medical necessity, that an inappropriate level of care prevented treatment to be given at such a level from being medically necessary and, thus, that it would not be covered by the plan.

Brown then turned his attention to appellant's denial of Elizabeth's preadmission certification application. He wrote that the psychiatric consultant who reviewed her case "concluded that Elizabeth Kent's condition was chronic and, as such, that there was little or no chance that her condition could be significantly improved or rehabilitated by the continuation of treatment. Based on this finding, the psychiatric consultant denied coverage for any further treatment on the basis that such treatment was not medically necessary." If Brown meant that appellant did not approve of *inpatient* care for Elizabeth but would approve of *outpatient* care for Elizabeth, he failed to clearly communicate this. It would not be unreasonable to interpret this letter as stating that the denial of coverage was due to the chronic nature of Elizabeth's condition. The trial court's factual finding that coverage was denied because of the chronic nature of Elizabeth's condition is supported by the evidence.

The trial court was asked to make two determinations: one, whether appellant's denial of benefit coverage to Elizabeth Kent was arbitrary and capricious; and two, whether additional inpatient treatment for Elizabeth was medically necessary. Although the court did not expressly set out the proper standard of review for the denial of coverage as arbitrary and capricious, the court's language indicates that it applied the arbitrary and capricious standard. Specifically, the court found that appellant had initially denied appellees' claim for benefits based on Elizabeth's chronic condition and her apparent lack of improvement. The court stated that this ground for denial of benefits was not correct based upon the policy in question. This statement is in accord with the proposition that a denial of benefits is arbitrary and capricious when it is not based upon the standards of the policy. The court then turned to the matter of whether future inpatient treatment of Elizabeth

was medically necessary. The court determined that the most appropriate level of care for Elizabeth was inpatient treatment and, therefore, that further inpatient treatment was medically necessary.

■ The question of whether the trial court improperly held a trial *de novo* has also been raised. The language of the trial court decision indicates that it based its decision that appellant's preadmission certification denial was arbitrary and capricious upon appellant's reasons for denying the claim and not upon the testimony concerning matters that developed after the denial. Because the trial court had also been asked to rule on the question of whether future treatment of Elizabeth at an inpatient facility such as Menninger was medically necessary, it was logical for it to hear testimony concerning Elizabeth while at Menninger.

Appellant's first and second assignments of error are overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and REILLY, JJ., concur.