**Leigh PARIS, Ronald Paris, and Jonathan Northrop, Plaintiffs,**

**v.**

**F. KORBEL & BROTHERS, INC., F. Korbel & Brothers, Inc., as Plan Administrator, and Does 1 Through 30, Inclusive, Defendants.**

**No. C–89–1278 TEH.**

United States District Court, N.D. California.

March 14, 1990.

Judgment March 16, 1990.

ORDER ON CROSS–MOTIONS FOR
SUMMARY JUDGMENT

THELTON E. HENDERSON, Chief
Judge.

Plaintiffs Leigh Paris, Ronald Paris and Jonathan Northrop move for summary judgment on their claims that defendant F. Korbel & Brothers (Korbel) violated portions of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1161–1168 (Supp.1987) (hereinafter "ERISA"), and that the defendant wrongfully terminated Leigh Paris. Defendant Korbel cross-moves for summary judgment that no ERISA violations occurred and that it did not wrongfully terminate Leigh Paris. In addition, Korbel moves on grounds of federal preemption for summary judgment on Leigh Paris' tort claims from Korbel's alleged violations of ERISA. For the reasons set forth below, this Court GRANTS summary judgment in favor of Korbel on Leigh Paris' claim of wrongful termination, and on her other tort claims, and GRANTS summary judgment in favor of the plaintiffs on their claim of ERISA violations.

I. Undisputed Facts

Plaintiff Leigh Paris was hired by Korbel sometime in February, 1985. She was terminated on April 15, 1988, after just over three years' employment, for breaching a company confidence regarding another employee.

Leigh signed three different documents stating that she could be fired, with or without cause, with or without notice, at any time, at the company's option or that she could quit at any time without notice: her employment application, a secrecy agreement, and the receipt for her employee handbook. In the course of her employment, Leigh received revised handbooks in 1987 and 1988.

In January, 1986, Leigh was promoted to "hospitality assistant." This job entailed giving v.i.p. tours of the winery, and also waitressing at the poolhouse, where executives and their guests often dined. She was told when promoted that whatever she heard in the poolhouse was confidential, and that a breach of this confidentiality could result in termination. Deposition of Leigh Paris at p. 62:9–14, attached as Exhibit A to Declaration of Jeffrey Wohl.

On April 13, 1988, while working in the poolhouse, Leigh overheard the executives discussing whether another employee, Garrett Krambs, would be allowed to go on part-time status. Krambs was a friend of Leigh, as was Krambs wife, Debbie. Leigh called Debbie that afternoon. In the course of their conversation, Debbie stated that the Krambses were hoping Garrett would be able to go part-time, to ease some personal family stress. Leigh replied "I can confirm that." Deposition of Leigh Paris at 136:13–25.

By April 14, Debbie told her husband what Leigh had said. Garrett Krambs became angry because Leigh's information meant that his personal problems were being discussed by Korbel executives, and Garrett had originally asked to go part-time by explaining those personal problems to his supervisor in confidence. Garrett Krambs' understanding was that his supervisor, Tom Gilliand, would not tell Krambs' troubles to anyone else. Garrett called Gilliand to complain not that Leigh knew but, that Gilliand had breached Krambs' confidence. Deposition of Garrett Krambs at p. 14:6–7, and p. 25.

Gilliand told Garrett that a company confidence had been breached. Garrett, realizing that Leigh's job might now be in jeopardy, asked if Gilliand could deal with this without mentioning Leigh's name. After speaking with Gilliand, Garrett called Leigh and warned her that her job might be in jeopardy. *Id.* at 15:22–16:3.

Gary Heck, President of Korbel, upon learning the above facts from Gilliand, ordered the personnel director, Jani Logsdon, to investigate, and if true, to fire Leigh Paris. Logsdon investigated. Leigh admitted the conversation with Debbie Krambs, and was terminated. Declaration of Jani Logsdon at p. 2:23–3:2.

Garrett Krambs is a pilot at Korbel, which maintains its own fleet of airplanes because of Heck's concern with commercial air travel safety. When Logsdon fired Leigh, Logsdon determined that Leigh had committed "gross misconduct" because Leigh's breach of a company confidence had angered a pilot, thereby risking the safety of Korbel executives who flew with that pilot. Deposition of Logsdon p. 78:14–26, attached as Exhibit B to the Declaration of William Fritz in Support of Summary Judgment.

When she was fired, Leigh Paris was not given any information that she could elect to continue her health insurance benefits at her own cost, as provided for under the Consolidated Omnibus Budget Reconciliation Act of 1986, codified in pertinent part at 29 U.S.C. § 1161 to § 1168 (1989) ("COBRA benefits"), which were 1986 amendments to ERISA. In addition, she was not given written reasons for her discharge.

At the time she was terminated, Leigh's dependent son, plaintiff Jonathan Northrop was qualified to receive COBRA benefits. Ronald Paris, Leigh's husband, was employed elsewhere, and received health care benefits from his employer as of April 1, 1988, and so was not a beneficiary under the Korbel benefits plan. Deposition of Ronald Paris at p. 15:2, attached as Exhibit B to the Declaration of Jeffrey Wohl.

Jonathan Northrop was injured on July 5, 1988, requiring medical treatment. At the time, Leigh and Jonathan had no medical insurance.

On July 13, 1988, Leigh telephoned Jani Logsdon and requested information about COBRA benefits, which Leigh had learned of from an insurance agent.[1] Logsdon told Leigh that COBRA "prohibited the extension of benefits to individuals who were terminated for gross misconduct." Deposition of Logsdon at p. 104:16–23.

On November 8, 1988, Leigh's attorney wrote to Korbel requesting information

---

1. Leigh Paris' declaration states, at paragraph 18, that she inquired for her and her family, while Jani Logsdon's deposition states that Leigh "asked if there was anyway for her to obtain access to insurance ..." p. 104:17–18. In addition, Logsdon's memo after her phone conversation with Leigh on July 13 states: "Leigh Paris called me to inquire about her rights under COBRA law ... She explained to me that her son had been involved in an accident about a week or so ago, and she has run into some major medical costs and does not currently have insurance."

about COBRA benefits for all the plaintiffs. On November 22, 1988, Harold Duncan, Vice President of Administration/Finance wrote to Leigh's lawyer, and enclosed information on how Leigh could elect to continue her health benefits under COBRA.

Leigh and Ronald Paris did not elect to continue their health coverage because the retroactive premium, dating back to April, 1988, would have been more than they had already spent on health care in the interim.

The plaintiffs filed suit on April 12, 1989.

## II. Discussion

### A. *Tort Claims Arising Out of ERISA Violations.*

■ The complaint states two tort causes of action arising from the alleged denial of COBRA benefits; the Second Cause of Action is for intentional infliction of emotional distress, the Fourth Cause of Action is for breach of the duty of good faith and fair dealing. In *Pilot Life Insurance Co. v. Dedaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), the Supreme Court held that ERISA preempted tort claims of bad faith by an insurer. Thus, here, the Second and Fourth causes of action are preempted by ERISA. Accordingly, these causes of action are DISMISSED for failure to state a claim.

### B. *Wrongful Termination.*

■ The plaintiffs' third cause of action is for wrongful termination on an employment contract. To make out a claim of wrongful termination, the plaintiff must rebut the statutory presumption found in California Labor Code § 2922 that she is an at-will employee. The presumption may be rebutted if the plaintiff can show "a course of conduct, including various oral representations," that created the reasonable expectation of termination only for cause, or other contract provisions. *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 675, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Pugh v. See's Candies,* 116 Cal.App.3d 311, 171 Cal. Rptr. 917 (Cal.Ct.App.1981).

In this case, the plaintiff's evidence does not rebut the presumption. She had worked at Korbel only three years, unlike Mr. Pugh's thirty-two. She had never been told she would be fired only for cause. Deposition Leigh Paris at p. 74:4–11. She signed at least three documents in which she acknowledged that she was an at-will employee. Korbel's personnel policies provide that employees who breach company confidences may be fired. Deposition of Leigh Paris, exhibit 21 at p. 29. Leigh Paris' own belief that she could not be fired without cause, even if it were true, would not rebut the statutory presumption because under the employer's policies, Leigh's actions constituted cause for termination. Leigh Paris has failed to come forward with evidence that a material dispute of fact exists as to whether she was an at-will employee. Accordingly, summary judgment is GRANTED in favor of Korbel on this cause of action.

### C. *COBRA Benefits.*

■ The Consolidated Omnibus Budget Reconciliation Act of 1986 provides that for a maximum of eighteen months, 29 U.S.C. 1162(2)(A)(i), employees, former employees, and qualified dependents may elect to continue the health care benefits provided by the employer. 29 U.S.C. § 1161. The employee or qualified beneficiary must pay for these benefits herself, at a cost of not more than 102% of the employer's cost. 29 U.S.C. § 1162(3). In addition, the employee, etc. only becomes eligible upon the happening of a qualifying event. The pertinent qualifying event here is termination for other than gross misconduct. 29 U.S.C. § 1163(1).

In the event of a termination, an employer must notify the health benefits plan administrator that a qualifying event has occurred within thirty days of that event. 29 U.S.C. § 1166(2). The health benefits plan administrator then has fourteen days to notify the former employee or qualified beneficiary that she is eligible to elect to continue her benefits. 29 U.S.C. § 1166(4). Civil penalties of up to $100 per day may be assessed against an administrator personal-

838

ly for failure to comply with § 1166(4). 29 U.S.C. § 1132(c).

The same civil penalties also may be assessed against any plan administrator who refuses "to comply with a request for any information which such administrator is required by this subchapter to furnish" within thirty days of that request. 29 U.S.C. § 1132(c).

In the present case, the plaintiffs move for summary judgment on the grounds that there is no material dispute that Korbel, and/or the plan administrator, Harold Duncan,[2] failed to fulfill the requirements of COBRA or of § 1132(c). Korbel counters that there is no material disputed fact that they fired Leigh Paris for alleged gross misconduct, and that therefore, they did not violate COBRA or § 1132(c).

There is no factual dispute that upon Leigh Paris' termination, Korbel or the plan administrator did not inform her of her rights to election as required by § 1166(4). Likewise, Korbel or the plan administrator did not respond to Leigh Paris' July request for information as required by § 1132(c). When there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed.R.Civ.Pro. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985). Here, where both parties move for summary judgment and there are no disputed material facts, it remains only to determine which party is entitled to judgment as a matter of law. The answer lies in whether Korbel properly determined that Leigh Paris had been fired for gross misconduct.

There are no regulations in effect which define "gross misconduct," or govern how an employer decides that an employee's termination is for "gross misconduct." The legislative history of COBRA states only that employers are to act in good faith and with a reasonable interpretation of the "substantive rules, notice requirements,

etc." House Rep. no. 99–241(II), 99th Cong. 2nd sess. p. 4–7, Sept. 11, 1985. Korbel asserts that it acted reasonably and in good faith by concluding that Leigh Paris committed gross misconduct, because of the perceived risk to Korbel executives from flying with an upset pilot.

The plaintiffs submit the definition of "misconduct" applied by courts in California to determine whether an employee is eligible for the protections of unemployment insurance:

> conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interests or the employees duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability, incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" ... *Amador v. Unemployment Insurance Appeals Board*, 35 Cal.3d 671, 678, 200 Cal.Rptr. 298, 677 P.2d 224 (1984) (citations omitted).

Although it is unclear what Congress meant by "gross misconduct" in § 1163, the above definition sheds more light on possible meanings than do Korbel's protestations of good faith. In addition, the similarity of purpose between unemployment insurance and the COBRA provisions of ERISA—to protect and cushion a worker and her family in transition from job to job[3]—compels the conclusion that Leigh Paris' conduct did not amount to "gross

2. Duncan is Korbel's Vice President for Administration/Finance. His letter of November 22, 1988, in which he sent Leigh Paris information about her COBRA benefits, is signed "Harold Duncan, Plan Administrator." Declaration of Jefferey Wohl at Exhibit 6.

3. *See e.g.,* Senate Report no. 99–146, 99th Cong. 2nd sess. *reprinted in* 1986 U.S.Code Cong. & Admin.News P.L. 99–272 at p. 322.

misconduct." Under the above definition, Leigh would have had to had an "evil design" to injure Korbel when she called Debbie Krambs. Although Leigh may be charged with poor judgment, she cannot be accused of gross misconduct. Accordingly, we conclude that Korbel unreasonably determined that Leigh Paris committed gross misconduct and wrongfully denied her notice of and information about her COBRA benefits.

### D. *Penalties.*

█ It only remains to determine what penalties, if any, Korbel or Duncan must pay. We note preliminarily that this matter is one of first impression in this Court. Thus, we look to other courts' interpretations of § 1132(c) in deciding whether to assess penalties.

Korbel argues that as they acted in good faith, and as Leigh Paris was not prejudiced by Korbel's actions, they should pay no penalties. Plaintiffs, on the other hand, assert that the lack of prejudice does no prevent us from assessing penalties.

Prejudice, has been considered by some courts, and ignored by others. In *Chambers v. European American Bank*, 601 F.Supp. 630, 638 (E.D.N.Y.1985) the court did not assess penalties where the plaintiff/employee had not been prejudiced by the denial of information about the employers' benefits plans. *See also Pollock v. Castrovinci*, 476 F.Supp. 606, 619 (S.D.N.Y.1979) (court refused to assess penalties where evidence suggested plaintiff's request for information was not in good faith). Other cases cited in *Chambers* have required prejudice, but have also denied penalties for other reasons. In *Paris v. Profit Sharing Plan, etc.*, 637 F.2d 357, 362 (5th Cir.1981), the appellate court affirmed the trial court's denial of penalties where the plaintiffs had made no attempt to show prejudice. In *Wesley v. Monsanto Co.*, 554 F.Supp. 93 (E.D.Mo.1982) *affirmed* 710 F.2d 490 (8th Cir.1983), although the plaintiff was unprejudiced, he had never requested information, he had only asked that his pension benefits be paid. In *Shlomchik v. Retirement Plan of Amal-*

*gamated Ins.*, 502 F.Supp. 240, 245 (E.D. Pa.1980), there was no prejudice when the plaintiff had requested only a copy of the retirement benefits plan, not information about his ability to choose continuation of his health care plan. In *Adams v. Western Conf. of Teamsters Pension Plan*, 484 F.Supp. 933 (N.D.Utah 1979), the plaintiff had not proved that he had not been provided with requested information. In *Kleinhans v. Lisle Savings Profit Sharing Plan*, 810 F.2d 618, 624, and n. 9 (7th Cir.1987), there was no request for information.

However, in *Porcellini v. Strassheim Printing Co.*, 578 F.Supp. 605, 612 (E.D. Pa.1983), the court assessed penalties even though there was no prejudice to the plaintiff because the purpose of the penalty was to punish poor benefit plan administrators, not to compensate the employees. In *Bova v. American Cyanamid*, 662 F.Supp. 483 (S.D.Ohio 1987), the court assessed penalties, and followed *Porcellini.* Likewise, in *Maryonovich v. Market Data Retrieval, Inc.*, 716 F.Supp. 343 (N.D.Ill.1989), the court was inclined to follow *Porcellini*, but did not reach the penalties issue because the presence of prejudice to the plaintiff was an unresolved factual issue. And, in *Bemis v. Hogue*, 635 F.Supp. 1100, 1105–06 (E.D.Mi.1986), the court assessed penalties without a showing of prejudice in order to punish an indifferent plan administrator. *Cf. Lee v. Prudential Insurance Co. of America*, 673 F.Supp. 998, 1005 (N.D.Cal. 1987) (plaintiff permitted to amend and to state a claim for penalties after showing a prior specific request for information about benefits and administrative appeal). All of the cases cited in the preceding paragraph leave the decision to assess penalties to the sound discretion of the trial court. *See, e.g., Paris v. Profit Sharing Plan, etc.*, 637 F.2d 357, 362 (5th Cir.1981).

In *Porcellini*, 578 F.Supp. 605, 612, the court was convinced that the penalties provisions of § 1132(c) were intended to induce compliance by plan administrators. The statute does not require prejudice to be shown by the plaintiff, and gives the trial court the discretion to decide whether to assess penalties. 29 U.S.C. § 1132(c). Ad-

ditionally, a plan administrator's duties under COBRA are not onerous, while the result of non-compliance could be disastrous for the former employee.[1] In order to best effectuate the purpose of COBRA, *see e.g.,* n. 3 *supra,* we conclude that *Porcellini* was rightly decided, and accordingly will assess penalties.

In determining the amount of penalty to assess, Korbel's good faith may be a mitigating factor. *Cf. Dehner v. Kansas City Southern Industries, Inc.,* 713 F.Supp. 1397, 1401–1402 (D.Kan.1989). We also conclude, upon review of the law, that the lack of actual harm to an ERISA beneficiary may also be a mitigating factor.

In the present case, Korbel has violated both § 1166 (notice upon the happening of a qualifying event) and § 1132 (provide information upon request). Accordingly, summary judgment is granted in favor of plaintiffs on their claims of ERISA violations, and Harold Duncan, Korbel's Vice President for Administration/Finance, is ordered to pay to Leigh Paris penalties under 29 U.S.C. §§ 1132 and 1166 in the amount of $10 per day for each day between May 29, 1988[5] and November 22, 1988. Duncan also is ordered to pay to Leigh Paris penalties under § 1132(c) in the amount of $10 per day from August 13, 1988 to November 22, 1988, the time between Leigh Paris' initial request for information, and Korbel's proper response.

Regarding Jonathan Northrop, Korbel is hereby ordered to pay penalties of $10 per day from May 29, 1988 to November 22, 1988 for failure to provide Jonathan with proper notice under 29 U.S.C. § 1166(4). Korbel is also ordered to pay penalties of $10 per day from August 13, 1988 to November 22, 1988 pursuant to § 1132(c) for failure to respond to the request for infor-

mation for Jonathan Northrop. *See* n. 1 *supra.*

As Ronald Paris was not an eligible beneficiary at any time during this litigation, he has failed to state a claim on which relief can be granted, and his claims are hereby DISMISSED.

### E. *Attorneys Fees.*

■ The Ninth circuit balances five factors in determining whether to grant attorneys' fees under 29 U.S.C. § 1132(g). Here, they include 1) Korbel's bad faith; 2) Korbel's ability to pay an award of fees; 3) the deterrent effect of an award of fees; 4) whether the party seeking fees sought to benefit all beneficiaries of an ERISA plan; and 5) the relative merit of the parties' positions. *Terpinas v. Seafarer's International Union of N. America,* 722 F.2d 1445 (9th Cir.1984) (citing *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446 (9th Cir.1980)).

Although Korbel is not unable to pay a fee award, there is no evidence that Korbel acted in bad faith—it truly, although erroneously, believed that Leigh Paris committed gross misconduct. In addition, there is no evidence that an award of fees would have a greater deterrent effect than the penalties assessed. Leigh Paris' suit did not seek to benefit all beneficiaries at Korbel. Despite Korbel's good faith beliefs, viewed objectively, Korbel's position lacks the merit of the plaintiffs' ERISA claims. However, the lack of merit does not tip the balance towards an award of attorneys fees. Accordingly, plaintiffs' motion for attorneys fees is DENIED.

### III. Conclusion

1. Summary Judgment in favor of Korbel is GRANTED as to Leigh Paris' claim of wrongful termination.

---

**4.** Leigh and Ronald Paris were offered their COBRA benefits in November, 1988, eight months after Leigh had been terminated. At that time, the cost of paying eight months retroactive health insurance premiums was higher than the amount of medical bills they had incurred in the interim. However, consumers purchase medical insurance to protect from the risk of catastrophic medical bills. In hindsight, those who never fall ill would undoubtedly give up their medical insurance in exchange for cash in hand. The wisdom of hindsight in a particu-

lar case should not govern our generalized interpretation of the prerequisites for imposing a statutory penalty.

**5.** May 29 is forty four days from the date Leigh Paris was fired. This includes thirty days for the employers to notify the administrator of a qualifying event, § 1166(2), and fourteen days for the administrator to provide information to the terminated employee, § 1166(4).

2. Summary judgment in favor of plaintiffs Leigh Paris and Jonathan Northrop is GRANTED as to their claims of lack of notice (29 U.S.C. 1166(4)) and penalties are assessed as stated above.

3. Summary judgment is GRANTED in favor of plaintiff Leigh Paris and Jonathan Northrop on their claims of lack of information following a request, 29 U.S.C. 1132(c), and penalties are assessed as stated above. Summary judgment is GRANTED in favor of the plaintiff as to Jonathan Northrop on the same claim.

4. The claims of plaintiff Ronald Paris are DISMISSED for failure to state a claim.

5. The plaintiffs' tort claim based on violations of ERISA are DISMISSED as preempted by ERISA.

6. Plaintiffs motion for attorneys fees is DENIED.

7. Defendant's Motion To Strike Plaintiff's Reply or in the alternative, Application for Leave to File Surrebuttal is DENIED.

IT IS SO ORDERED.

## JUDGMENT

IT IS HEREBY ADJUDGED THAT:

1. Summary Judgment be extended in favor of Korbel as to Leigh Paris' claim of wrongful termination, and Leigh Paris shall take nothing by this claim.

2. Summary Judgment be extended in favor of plaintiffs Leigh Paris and Jonathan Northrop as to their claims of lack of notice, 29 U.S.C. 1166(4). Leigh Paris and Jonathan Northrop shall each take $10.00 per day from May 29, 1988 to November 22, 1988, inclusive, to be paid by defendant Korbel.

3. Summary judgment be extended in favor of plaintiffs Leigh Paris and Jonathan Northrop on their claims of lack of information following a request, 29 U.S.C. 1132(c). Leigh Paris and Jonathan Northrop shall each take $10.00 per day from

August 13, 1988 to November 22, 1988, inclusive, to be paid by defendant Korbel.

IT IS SO ADJUDGED.