**Earl BROWN and Linda Brown, Plaintiffs,**

v.

**NEELY TRUCK LINE, INC; Blue Cross and Blue Shield of Alabama, Defendants.**

**Civ. A. No. 92–D–659–E.**

United States District Court, M.D. Alabama, Eastern Division.

April 14, 1995.

Order Modifying Decision April 17, 1995.

---

William Rufus King, Montgomery, AL, Benny Charles Hand, Jr., Auburn, AL, for plaintiffs.

George M. Boles, Birmingham, AL, for defendants.

## MEMORANDUM OPINION

De MENT, District Judge.

A hearing in the above-styled action was held on January 10, 1994, in the United States District Court for the Middle District of Alabama, Eastern Division. Earl and Linda Brown (collectively the "Browns" or the "Plaintiffs") allege that Earl Brown's employer, Neely Truck Line, Inc. (hereinafter "Neely" or the "Defendant"), did not provide no-

tice of the opportunity for continued health benefit coverage under the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1001 *et seq.* The Browns contend that in failing to provide the notice, Neely violated the Consolidated Omnibus Budget Reconciliation Act (hereinafter "COBRA"), 29 U.S.C. 1166.

## JURISDICTION & VENUE

Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiffs allege a violation of a federal statute, 29 U.S.C. § 1166.[1] Personal jurisdiction and venue are not contested.

## BACKGROUND

Plaintiffs instituted the above-styled cause in the Circuit Court of Lee County, Alabama, on May 12, 1992. Earl Brown (hereinafter "Mr. Brown") was employed by Neely for a number of years. Between December, 1990, and June, 1991, Defendant deducted a prescribed premium from Mr. Brown's paycheck for health insurance. Mr. Brown's wife, Linda Brown (hereinafter "Mrs. Brown"), was also covered under this plan.

During the time the plan was effective, Mrs. Brown suffered from diabetes and resulting complications which required medical attention. Mr. Brown contends that Neely communicated to him that Blue Cross and Blue Shield of Alabama (hereinafter "Blue Cross"), the provider of Neely's health benefit plan, would cover Mrs. Brown's needs according to the policy. Mrs. Brown sought and received the needed medical treatment. Mrs. Brown then presented her claims to Blue Cross. Blue Cross then purportedly informed Plaintiffs that the contract between it and Neely had been canceled in December,

1990, and requested that Plaintiffs reimburse it for moneys expended for Mrs. Brown's medical treatment.

Neely then acquired the services of Principal Mutual Life Insurance Company (hereinafter "Principal Mutual")[2] to replace Blue Cross as its health benefit plan insurer. J. Miller Affidavit, June 7, 1993.[3] Soon thereafter, Principal Mutual began paying Mrs. Brown's diabetes treatment, in full, under a comprehensive medical coverage policy as the plan offered by Principal Mutual contained no "preexisting condition" exclusion provision(s).[4] *See id.* The Browns were covered by the Neely plan provided by Principal Mutual from its effective date until Mr. Brown terminated his employment with Neely.

Mr. Brown terminated his employment with Neely on or about September, 6, 1991, and began employment with All State Packaging of Opelika, Alabama (hereinafter "All State"). All State provided health insurance coverage for its employees, and their spouses through Benefit Trust Life Insurance Company (hereinafter "Benefit Trust"). During a 15-month period following Earl's employment with Defendant Neely, Mrs. Brown incurred medical expenses allegedly totalling approximately twenty-five thousand dollars ($25,000). Benefit Trust declined to pay a portion of these medical expenses, as the expenses resulted from a physical condition existing prior to the effective date of coverage.[5]

Subsequently, Plaintiffs instituted the above-styled action in the Circuit Court of Lee County, Alabama, on May 12, 1992.[6] In their complaint, Plaintiffs alleged that they

---

1. Section 1331 provides, "[t]he federal district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States."

2. The plan provided by Principal Mutual was effective on July 1, 1991.

3. John Miller, Jr. is the President of Neely Truck Line, Inc.

4. Plans with pre-existing condition(s) exclusion provisions do not provide full coverage for known medical complications or injuries existing prior to the effective date of a group health plan.

5. According to the plan provided by All State through Benefit Trust, there was a 90-day waiting period for coverage and a one-year pre-existing condition provision. *See* All State Group Insurance Plan, p. 5, ¶ G.1, 2.

6. Defendants filed a Notice of Removal to this court on June 3, 1992, as this action arises from the administration of an employee welfare benefit plan and is governed by the provisions of ERISA, 29 U.S.C. § 1001 *et seq.*

were entitled to recover under the following state law theories: fraud; breach of contract; breach of fiduciary duty; conversion; and bad faith.[7] On October 7, 1993, Plaintiffs amended their complaint to include claims of interference with ERISA rights and violations of COBRA.

Neely filed a cross complaint against Blue Cross on June 10, 1992. Neely claimed that its co-defendant breached their contract by not providing the coverage for which the parties had contracted. Neely contended that it and Blue Cross executed a contract to provide health insurance for the former's employees on or about June 12, 1988, and that the contract was believed to be in effect until Blue Cross delivered the notice of retroactive cancellation of the policy to Plaintiff. Neely asserted that Blue Cross had agreed to a deferred payment of premiums plan. Neely also claimed that immediately prior to the date of the termination notice, Blue Cross accepted a renewal premium for the period commencing July 1, 1991. At the same time, Blue Cross allegedly accepted a check for premiums for the prior policy term—December 1, 1990 to June 30, 1991.

On September 10, 1993, co-defendants and third party litigants, Neely and Blue Cross, entered a joint stipulation to dismiss, with prejudice, all of Neely's claims against Blue Cross. On the same day, the court entered an order dismissing, with prejudice, Neely's claim(s) against Blue Cross. On October 12, 1993, Plaintiffs and Blue Cross filed a joint stipulation to dismiss, with prejudice, all of Plaintiffs' claims against Blue Cross. The Browns and Blue Cross executed a *pro tanto* release; therefore, the Browns' claims against Neely remained.[8]

A judicial proceeding in the above-styled action was held on January 10, 1994. Plaintiffs contend that Defendant Neely violated the notice requirements of COBRA. Plain-

---

7. All state law claims pertaining to employer provided welfare benefit plans are preempted by ERISA. Section 514(a) of ERISA, commonly referred to as ERISA's preemption clause, teaches that ERISA "supersede[s] any and all State laws insofar as they.... relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA defines a state law as all "laws, decisions, rules, regulations or other.... actions having the effect of law." 29 U.S.C. § 1144(c). The United States Supreme Court and the Eleventh Circuit court of Appeals liberally interpret the breadth of ERISA's preemption clause, extending the preemption doctrine to include virtually all state law claims arising out of, or relating to, the denial of a benefits claim or the purported improvident administration of an employee welfare benefit plan. *See FMC Corp. v. Holliday*, 498 U.S. 52, 56–58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The *Holliday* Court stated:

"The [ERISA] preemption clause is conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of every state law that 'relates to' an employee benefit plan governed by ERISA.... A law relates to an employee welfare plan if it has a connection with or reference to such a plan."

*Holliday*, 498 U.S. at 58, 111 S.Ct. at 407 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). *See also Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 43, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (ERISA "preempts state common law and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan").

In *First National Life Insurance Co. v. Sunshine–Jr. Food Stores, Inc.*, 960 F.2d 1546 (11th Cir.1992), the court held that the appellant's claims of mishandling benefit payments and failure to adhere to the terms of the employee welfare benefit plan were preempted by ERISA. The court opined:

"[w]e must reject the argument that these claims do not 'relate to' the employee benefit plan. Congress used the words 'relates to' in their broad sense and did not mean to preempt only state laws specifically designed to affect employee benefit plans.... A state law relates to an employee benefit plan if it 'has a connection with or reference to such a plan'.... [S]tate contract and tort laws that impose varying standards upon the administrator of a welfare benefit plan create a significant potential conflict with ERISA and thus are logically preempted."

In light of this great deference to ERISA's preemptive potency, courts have even fashioned an exception to the "well-pleaded complaint rule" for ERISA cases, thereby making actions filed in state court which arises out of an employee benefit plan removable even when the complaint does not mention ERISA. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Brown v. Connecticut General Life Insurance Co.*, 934 F.2d 1193, 1196 (11th Cir.1991).

8. According to J. Miller, Neely believed that this release absolved it from any liability. *See* Miller Affidavit. On September 22, 1993, Defendant Neely filed a motion for summary judgment. The court denied Neely's motion on October 20, 1993.

tiffs allege that their financial loss is a direct consequence of the failure of Neely to allow Mrs. Brown to elect continuation coverage after Mr. Brown's termination of employment with Neely. Plaintiffs contend that as plan sponsor and plan administrator Neely was required to apprise each qualified beneficiary, the employee and his spouse, that they may elect continuation coverage under the plan. Plaintiffs seek statutory damages and attorney's fees. Plaintiffs filed a post-trial brief on January 18, 1994. Neely filed its post-trial brief on February 4, 1994.

## DISCUSSION & ANALYSIS

### I. COBRA Overview

 Continuation coverage under previous health care benefit plans is available to qualified beneficiaries. Spouses of covered employees are included within the definition of "qualified beneficiaries." 29 U.S.C. § 1167(3); *National Companies Health Benefit Plan v. St. Joseph's Hospital of Atlanta, Inc.,* 929 F.2d 1558, 1567 (11th Cir.1991). In order for a qualified beneficiary to receive continuation coverage, a "qualifying event" must transpire. *National Companies Health Benefit Plan,* 929 F.2d at 1567. Termination of a covered employee suffices as a cognizable qualifying event so long as the termination is not the consequence of gross misconduct. *Id.;* 29 U.S.C. § 1163.[9] There is no indication, and Defendants do not contend, that Mr. Brown's termination resulted from any misconduct. Therefore, at that point, the court finds that Mr. Brown and all beneficiaries realized a qualifying event.

 Once, as here, it is determined that a qualifying event has occurred, COBRA requires employers to provide notice to the covered employee and all qualified beneficia-

ries informing them that continued health care coverage under their current plan is an option. *See* 29 U.S.C. § 1165(1)(A). Such notice must allow the affected person(s) 60 days to choose among the various plans for health care coverage. 29 U.S.C. § 1165(1)(B); *Meadows v. Cagle's, Inc.,* 954 F.2d 686, 691 (11th Cir.1992).[10] However, the covered employee or qualified beneficiary has no right to employer subsidization of his or her health insurance; but rather, should he or she choose to participate in the previous plan, he or she must pay his or her own insurance premiums, at a cost not to exceed 102% of the employer's cost. 29 U.S.C. § 1162(3); *see also Paris v. Korbel & Brothers, Inc.,* 751 F.Supp. 834, 837 (N.D.Cal. 1990); *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 406 (E.D.Ark.1992).

The United States Eleventh Circuit Court of Appeals has offered the following explanation of COBRA:

"Congress enacted COBRA because it was concerned about the fate of individuals who, after losing coverage under their employer's ERISA plan, had no group health coverage at all. Continuation coverage would afford these individuals group health coverage until they were able to secure some other coverage. Recognizing the substantial costs continuation coverage would place on employer-operated ERISA plans, and thus beneficiaries of these plans, Congress did not make continuation coverage infinite in duration. Instead, Congress, under ERISA, gave beneficiaries a maximum period of either eighteen or thirty-six months of continuation coverage, a reasonable length of time for most to secure other group health coverage.[11]

---

9. Section 1163(2) provides in relevant part that: [T]he term "qualifying event" means.... (2) [t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment. 29 U.S.C. § 1163(2).

10. Moreover, ERISA mandates that all beneficiaries be afforded copies of documents explaining plan benefits. *Meadows,* 954 F.2d at 691–92; *see also* 29 U.S.C. § 1024(b) (stating "[t]he administrator shall furnish to each.... beneficiary receiving under the plan, a copy of the summary, plan description, and all modifications....").

11. In the case at bar, the applicable time for notifying a qualified beneficiary is eighteen months following the qualifying event. Section 1162(2) provides:

The coverage must extend for at least the period beginning on the date of the qualifying event and ending ... [i]n the case of a qualifying event described in section 1163(2) [termination of employment]...., [on] the date which is 18 months after the date of the qualifying event.

29 U.S.C. § 1162(2)(A)(i).

Additionally, Congress provided for certain terminating events. One such event is the beneficiary's obtention of other group health coverage. This provision is consistent with the goals of COBRA. Some beneficiaries are able to obtain new coverage in less than eighteen or thirty-six months. When these individuals obtain their new coverage, coverage under their former ERISA plan is unnecessary. In these cases, Congress' goal has been served—the employee has group health coverage....."

*National Companies*, 929 F.2d at 1569–70 (footnote added).

## II. COBRA Notice

■ The plan administrator must provide sufficient notice of COBRA rights on two distinct occasions. First, the plan administrator must provide notification of COBRA rights to covered employees and their spouses at the commencement of plan coverage. 29 U.S.C. § 1166(a)(1); *Phillips*, 796 F.Supp. at 406. Second, the occurrence of a qualifying event prompts the additional notification of COBRA rights. 29 U.S.C. § 1166(a)(4). In the event of employment termination, the employer must notify the plan's administrator that a qualifying event has occurred within 30 days of that event. 29 U.S.C. § 1166(a)(2). The plan administrator, in turn, is required to notify the covered employee and all qualifying beneficiaries of their COBRA rights within 14 days. 29 U.S.C. § 1166(a)(4).

■ The court acknowledges that there is not an abundance of law in the Eleventh Circuit regarding notice and the consequences of failing to provide **actual** notice under COBRA. However, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well. In *Mlsna v. Unitel Communications, Inc.*, 825 F.Supp. 862 (N.D.Ill.1993), the court concluded that COBRA required separate notice to Theodore Mlsna, the covered employee, and Eileen Mlsna, his spouse and qualified beneficiary. *Mlsna*, 825 F.Supp. at 865, n. 2. In *Mlsna*, the court declined de-

fendant Unitel's invitation to embrace the notion that when an employer terminates an employee for gross misconduct, the employer's obligation to provide the employee's spouse with COBRA notification is excused. *Mlsna*, 825 F.Supp. at 865. The court found that Mlsna's theory was not consistent with the legislative history of COBRA and stated that:

> "Congress wanted to protect spouses and dependents of employees from abruptly losing health care coverage. It appears unreasonable that the action of the employee could excuse the COBRA protection of the spouse."

*Id.*

Similarly, the court rejected Unitel's argument that because Theodore Mlsna was aware of his COBRA rights, notice to his wife was thereby obviated. The *Mlsna* court stated, "cases more in line with Congress's intent in enacting COBRA specifically state an employee's knowledge is irrelevant to an employer's duty to provide COBRA notification." *Mlsna*, 825 F.Supp. at 865 (citing *Phillips*, 796 F.Supp. at 409). Accordingly, the court finds that Neely was required to provide both Earl and Linda Brown with COBRA notice following the termination of Earl's employment with Neely.

■ In their "Post–Trial Memorandum" (hereinafter "Post-trial Brief"), Plaintiffs assert that Neely was both the plan administrator and plan sponsor of the benefit plan at issue.[12] Defendant Neely does not offer any evidence to rebut or contradict Plaintiff's assertion; therefore, the court finds that Neely assumed the role of plan administrator as contended in Plaintiff's Post-trial Brief. Because Neely was the administrator and the sponsor of the plan, it had an affirmative duty to provide COBRA notice to Mr. and Mrs. Brown regarding their right to elect continuation coverage under the group plan underwritten by Benefit Mutual upon the plan's commencement and within 14 days after Mr. Brown's termination. Mr. Brown's employment was terminated on September 6, 1991; therefore, the Browns should have re-

---

12. Pltf. Post-trial Brief, p. 2.

ceived individual notice on or before September 20, 1991.

■ The parties vehemently dispute whether the Browns actually received notice informing them of their rights under COBRA and that they could elect to continue their health coverage under the health benefit plan made available to Earl Brown as an employee of Neely should a qualifying event occur. The Browns contend that Neely failed to provide the COBRA notice when the plan commenced and following Mr. Brown's termination. Contrarily, Neely claims that it did not neglect its obligation and provided the Browns with the statutorily required notice by mail.

■ It is a long established presumption that a letter properly addressed, stamped, and mailed was received by the individual to whom the letter was addressed. *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Hoffenberg v. Commissioner of Internal Revenue*, 905 F.2d 665, 666 (2nd Cir.1990); *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989); *Phillips*, 796 F.Supp. at 407; *Truesdale v. Pacific Holding Co.*, 778 F.Supp. 77, 81 (D.D.C.1991). Mere denial of receipt is insufficient to rebut the presumption. *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2nd Cir.1985). However, "testimony of non-receipt standing alone, would be sufficient to support a finding of non-receipt...." *Riverside*, 796 F.Supp. at 408 (quoting *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir.1985)). Therefore, assuming mailing was the selected mode of effecting notice, absent a showing that a letter informing individuals of the opportunity of continued group health coverage was actually mailed, a party failed to sufficiently demonstrate good faith compliance with the COBRA notification requirements.

During the trial, Mrs. Carol Neely Miller (hereinafter "Mrs. Miller"), Neely's "insurance person," testified that "to the best of her knowledge" she mailed booklets to Mrs. Brown notifying her of the continuing coverage with Benefit Mutual. Mrs. Miller also testified that it was Neely's practice and procedure to mail the information booklet. Mrs. Brown admits receiving slick cardboard booklets. Moreover, Mrs. Brown admits reading the entire booklet, but does not recall reading any material regarding continuation coverage rights under the plan provided by Neely. However, Mr. Brown contends that he does not recall receiving any information regarding COBRA notification or booklets matching the description of the ones mentioned by Mrs. Miller. Mrs. Neely also avers that she effected COBRA notice upon Mr. Brown at the termination of his employment through a document entitled "Planholder COBRA Reference Guide." Mr. Brown denies receiving this document as well.

In the words of Defendant Neely, the court has before it a classical "swearing match" with each party, predictably, voicing its reasons for the court to accord merit to its version of the purported occurrences. At trial, Mrs. Miller was less than certain as to whether she in fact mailed the statutorily required notice to the Plaintiffs. Moreover, she produced no documents kept in the normal course of business to substantiate her testimony. On the other hand, Plaintiffs testify that they received no COBRA notice whatsoever.

■ By express and unequivocal statutory provisions, the United States Congress has issued a mandate that employers provide qualified beneficiaries with notice setting forth their option to elect continued benefits under a plan following a qualifying event, such as termination of a covered employee. In light of these express provisions, the burden is on the employer to demonstrate that it has implemented a procedure reasonably calculated to effectuate actual notice. The court finds that Neely has not done so in the present case. In a situation of this ilk, where neither side produces conclusive proof or disproof, the balance tilts generally in favor of the party or parties not bearing the burden. This case is no exception.

The court advises Defendant to implement a system which will bear proof of actual provision of COBRA notice. For example, Defendant could submit notice by certified mail or by procuring a certificate of mailing. The court is placed in an unusually precarious predicament when it is forced to believe

one faction or the other and supporting proof is virtually non-existent. The court has no choice but to conclude that the party bearing the burden may not prevail. Therefore, the court finds as a matter of fact that Plaintiffs did not receive notice of their COBRA rights.

As heretofore noted, in the future, Neely should assume a more definite and systematic policy to ensure that qualified beneficiaries receive their statutorily prescribed COBRA notice. Having found that the Browns did not receive notice as required by COBRA, the court will determine the extent of Plaintiffs' damages.

### III. Damages/Penalties

■ Civil penalties up to one hundred dollars ($100.00) per day may be assessed against the plan administrator for failure to comply with COBRA's notification requirements. 29 U.S.C. § 1132; *see also Paris,* 751 F.Supp. at 837–38. While a defendant may be liable for up to eighteen months following termination, the court finds that the applicable period to which damages may be lawfully assessed in the case at bar is fifteen months—the total of a three month waiting period before either of the Plaintiffs was accepted into the plan offered by All State plus the one-year exclusion period for Mrs. Brown's pre-existing condition. Established law in this Circuit regarding the consequences of failing to render COBRA notice is virtually non-existent. Therefore, the court will turn to those tribunals having determined the issue.

In *Paris,* the court determined that the appropriate penalty was $10/day for each qualified beneficiary under the subject plan (from the time notice should have been rendered until 18 months thereafter) as the defendant failed to inform the employee of her rights and neglected to apprise the dependent son of his right to elect continued health care benefits at the employer's cost. The court also pointed out that "a plan adminis-

trator's duties under COBRA are not onerous, while the result of non-compliance could be disastrous for the former employee." *Id.* at 840.

Plaintiffs have produced no evidence to the court's satisfaction that Neely behaved in bad faith; therefore, the court does not find that the full $100.00/day penalty should be evoked. Instead the court finds that a penalty in the amount of $10.00/day for each Plaintiff is sufficient to capture Defendant's attention while simultaneously recognizing their apparent non-malicious posture in this matter. Mrs. Brown's damages will be assessed from 14 days following Mr. Brown's termination to the date in which she received full satisfaction of her medical expenses under the group plan offered by All State. The relevant period for assessing Mr. Brown's damages is from 14 days following his termination of employment with Neely to 90 days after he elected coverage under the plan provided by All State. Interest compounded annually at a rate of eight percent per annum (8%/year) shall be attached to the individual sums computed utilizing the aforementioned formula.

■ Furthermore, the court finds that Neely should satisfy Plaintiff's unpaid medical expenses minus the cost of the premiums to Neely, plus two percent, during the period she was not fully covered by a group health insurance plan. The court assesses this damage because given appropriate notice, Mrs. Brown may not have incurred the respective medical expenses.[13] Finally, the court finds that an award of attorney's fees is inappropriate in this matter as the court is not convinced that Defendant Neely behaved in a malicious manner.[14] *See National Companies Health Benefit Plan,* 929 F.2d at 1575–76 (court assessed attorney's fees because it would make ERISA sponsors less likely to make representations concerning health coverage and afterwards not fulfill their obligations).

---

13. *See Gaskell v. Harvard Co-op Society,* 762 F.Supp. 1539, 1543 (D.Mass.1991) (stating that at the very least, the objective is to place the plaintiffs "in the same position [they] would have been in had full continuation coverage been provided").

14. ERISA states that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

## CONCLUSION

Because the court is not convinced that Neely provided the Browns with the statutorily required notice under COBRA, it finds that Defendant Neely is liable to Plaintiffs as heretofore set forth.

A judgment in accordance with this memorandum opinion shall be entered separately.

## *JUDGMENT*

In accordance with the attached memorandum opinion and Rule 54 of the *Federal Rules of Civil Procedure,* it is

CONSIDERED and ORDERED that JUDGMENT be and the same is hereby entered in favor of Plaintiffs, Earl and Linda Brown, and against Defendant, Neely Truck Line, Inc. It is further

CONSIDERED, ORDERED and AD-JUDGED that damages be and the same are hereby ASSESSED against Neely Truck Line, Inc., as follows:

1. for liability to Linda Brown, in the amount of $10.00 per day from the fourteenth day following Earl Brown's termination of employment with Neely Truck Line, Inc. to the date on which the preexisting condition exclusion (evoked by the group health plan provided by All State Packaging) became lifted, plus interest thereon compounded annually at eight percent (8%);

2. for liability to Earl Brown, in the amount of $10.00 per day from the fourteenth day following Earl Brown's termination of employment with Neely Truck Line, Inc. to 90 days following Earl Brown's election of coverage under the plan provided by All State Packaging, plus interest thereon compounded annually at eight percent (8%); and

3. for satisfaction of the medical expenses incurred by Linda Brown, minus the cost, plus two percent, of the relevant premiums to Neely Truck Line, Inc. during the subject fifteen month period. It is further

CONSIDERED, ORDERED and AD-JUDGED that Plaintiff be awarded no attorney's fees as a consequence of prosecuting this action. It is further

CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against Defendant Neely Truck Line, Inc. for which let execution issue. It is further

CONSIDERED and ORDERED that Plaintiffs submit an itemized schedule, subject to the Court's approval, of the total sum due in accordance with the attached memorandum opinion and this judgment on or before April 28, 1995.

## *ORDER*

In its April 14, 1995, Memorandum Opinion and Judgment entered in the above-styled cause, the Court taxed interest on the damages at a rate of 8% compounded annually from the dates in which damages were assessed. Interest on money judgments in civil cases—

> "shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment."

28 U.S.C. § 1961.

In accordance with the foregoing provision, the court deems it necessary to modify its April 14, 1995, Memorandum Opinion and Judgment. The most recent auction of 52-week Treasury bills was held on March 30, 1995, and the average price accepted for bills auctioned on that day resulted in an equivalent coupon issue yield of 6.41%. Therefore, it is

CONSIDERED and ORDERED that the Court's April 14, 1995, Memorandum Opinion and Judgment be and the same are hereby MODIFIED to reflect that the interest taxed on the damages apportioned by the court is 6.41% from the date of entry of its Judgment—April 14, 1995. It is further

CONSIDERED and ORDERED that the Court's April 14, 1995, Memorandum Opinion and Judgment shall otherwise remain in full force and effect.