Joseph A. **BURGESS** and Diana Burgess, Plaintiffs,

v.

**ADAMS TOOL & ENGINEERING, INC.,** a Michigan corporation; Group Benefit Services, Inc., a Michigan corporation; and Adams Tool & Engineering, Inc. Employee Health Care Plan, Defendants.

No. 5:94–CV–190.

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 26, 1995.

Thomas E. Woods, Cummins, Woods & Panek, East Lansing, MI, for Plaintiffs.

Stephen R. Ryan, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, for Defendants Adams Tool & Adams Tool Health Care Plan.

Thomas R. Wurst, Smith, Haughey, Rice & Roegge, Grand Rapids, MI, for Defendant Group Benefit.

## OPINION

McKEAGUE, District Judge.

Plaintiffs complain that the defendants have violated various provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), specifically those codified at 29 U.S.C. §§ 1161–1168, which amend the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* The parties have submitted briefs in lieu of trial on this matter. For the reasons discussed more fully below, the Court awards judgment in favor of the defendants.

### I. FACTS

Plaintiff Joseph Burgess began his employment with Adams Tool and Engineering, Inc. in April of 1972. Mr. Burgess received workers' compensation benefits from 1982 until February 1992, when he returned to active employment. He continued his active employment until June of 1992, but worked reduced hours in both May and June of 1992.

Defendant Adams provided a group health insurance plan to eligible employees through Blue Cross and Blue Shield until March 28, 1993 and subsequently continued group health insurance benefits to eligible employees through a self-funded plan. Adams was the plan administrator of the self-funded group health plan from March 28, 1993 to March 28, 1994. Defendant Group Benefit Services, Inc. has administered this group health plan from March 29, 1994 to the present date.

Mr. Burgess and his wife, Diana Burgess, were covered under Adams' group health plan until June 30, 1992 because Mr. Burgess was an eligible employee. The Burgesses were also covered from July 1, 1992 through January 31, 1994, on the same terms as eligible employees, and paid $122.12 per month for coverage under the Adams Plan. Plaintiff Diana Burgess was, during these time periods, a covered qualified beneficiary under the group health plan.

Adams and Mr. Burgess negotiated a resolution of Mr. Burgess' pending worker's compensation claim on November 30, 1993. In this agreement, Adams paid Mr. Burgess $90,000 in redemption of his worker's compensation claim. During these negotiations, the parties also addressed plaintiffs' ability to obtain health care coverage. As part of the negotiated agreement, Adams continued health care coverage under the plan on the same terms for two additional months, through January 31, 1994. Adams also agreed to extend the plaintiffs' coverage through March 28, 1994, up to a "stop-loss" limit of $7,500 per person. The Burgesses agreed to pay the full cost of this coverage for February and March of 1994, at a rate of $355 per month. In addition, Mr. Burgess agreed to resign from Adams on November 30, 1993.

Mr. Burgess subsequently requested to extend his group health insurance beyond March 28, 1994, but his request was denied. Plaintiffs obtained new insurance coverage beginning on April 1, 1994, but were unable to secure medical insurance covering the pre-existing medical condition of Mrs. Burgess. Group Benefit Services sent a notice of COBRA eligibility to plaintiffs on June 19, 1994,

and a second correspondence in July of 1994, indicating that the COBRA notice was sent in error and the Burgesses were not entitled to COBRA benefits because Adams had already provided continuation coverage. Plaintiffs claimed entitlement under COBRA to 18 months of coverage starting from the time of Mr. Burgess' resignation on November 30, 1993, and this suit commenced.

The parties have filed briefs in lieu of trial on this matter, and a hearing was conducted on September 11, 1995, at which time the parties set forth their arguments. The Court has reviewed the briefs, responses and replies thereto, and considered the arguments offered by counsel. The Court now considers these matters ripe for determination.

## II. STATUTORY BACKGROUND

The Consolidated Omnibus budget Reconciliation Act of 1985 (COBRA) was enacted as a congressional response to concern regarding "growing number of Americans without any health insurance coverage and the decreasing willingness of our Nation's hospitals to provide care to those who cannot afford to pay." H.R.Rep. No. 24(I), 99th Cong., 2d Sess. 44, U.S.Code Cong. & Admin.News 1986, pp. 42, 622. COBRA was proposed as "an effort to provide continued access to affordable private health insurance for some of these individuals." Id. COBRA requires certain group health plans to provide "qualified beneficiaries" with the option of purchasing continuation coverage for a specified time period after the occurrence of a "qualifying event." The term "qualifying event" is defined in 29 U.S.C. § 1163 as any of the following events which, but for the continuation coverage required by COBRA, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee.

(2) The termination, other than by reason of such employee's gross misconduct, or reduction of hours, of the covered employee's employment.

(3) The divorce or legal separation of the covered employee from the employee's spouse.

(4) The covered employee becoming entitled to benefits under Title XVIII of the Social Security Act.

(5) A dependent child ceasing to become a dependent child under the generally applicable requirements of the plan.

(6) A proceeding in a case under Title II, United States Code, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163; 26 U.S.C. § 4980B(f)(3).

·The length of continuation coverage is determined by the particular "qualifying event," and is generally either 18 or 36 months. During this coverage, the qualified beneficiary may be required to pay up to 102% of the full cost of the coverage. 29 U.S.C. § 1162(3)(A). The continuation coverage must be subject to the same terms and conditions as provided to other qualified beneficiaries similarly situated. 29 U.S.C. § 1162(1). Any employer who fails to provide the option of "continuation coverage," as required by COBRA, may be subject to civil liability. 29 U.S.C. § 1132(a).

## III. THE BURGESS' COVERAGE

■ Adams does not contest its COBRA obligation to provide "continuation coverage" to the Burgesses for 18 months after the occurrence of a "qualifying event." Instead, Adams maintains that the "qualifying event" triggering continuation coverage occurred when Mr. Burgess first worked reduced hours in May and June of 1992, and that they provided alternate continuation coverage for at least 18 months afterwards. See 29 U.S.C. § 1163(2). Because Adams did not actually terminate the Burgess' coverage upon Mr. Burgess' working reduced hours, plaintiffs maintain that the reduction in hours was not a qualifying event.

Adams' Group Health Plan provides that employee health care coverage terminates 30 days from the date when an employee ceases active full-time employment. Adams did not terminate plaintiffs' coverage as specified in the Plan when Mr. Burgess ceased full-time employment. Instead, Adams continued to provide coverage under the Plan on the same basis as if Mr. Burgess continued to serve as a full-time employee.

In *Gaskell v. Harvard Co-op. Soc.*, 3 F.3d 495 (1st Cir.1993), the court considered whether COBRA continuation coverage ran from the date of the event triggering an employee's loss of benefits under the terms of an employer's health insurance plan or from the date of the loss of benefits.[1] The court noted that COBRA's statutory language "offers no explicit guidance in determining the relevant 'qualifying event' where, as here, the employee's termination or reduction in hours does not coincide with the 'loss of coverage' under the employer's plan." *Id.* at 499. As a result of the ambiguous language of the statute, the First Circuit reviewed the legislative history and concluded "that Congress intended an employee's eighteen-month period of continuation coverage to commence with *the event leading, under the terms of the plan, to loss of coverage,* rather than upon the loss of coverage itself." *Gaskell,* 3 F.3d at 499 (emphasis in original).

This Court's independent review of the legislative history comports with the First Circuit's findings in *Gaskell.* Accordingly, the Court finds that Mr. Burgess' reduction of hours was a qualifying event triggering COBRA continuation coverage. The fact that Adams continued the plaintiffs' coverage after the date when the Plan provides that benefits terminate does not affect this determination.

Even when the facts are construed in the light most favorable to plaintiffs[2] and June 30, 1992 is deemed the date of the "qualifying

1. The First circuit remanded the case because the record contained insufficient information concerning the terms of the group insurance plan. Thus, the court had no basis by which to determine whether a reduction in hours would actually result in loss of coverage pursuant to the terms of the plan. In the present case, the Court has been provided with a copy of the insurance plan at issue. The plan plainly provides that employee health care coverage terminates 30 days from the date when an employee ceases active full-time employment.

2. Neither party has provided the Court with the exact date in May·or June of 1992 that Mr. Burgess first began working reduced hours.

event," the Burgess' health care coverage would have terminated on July 30, 1992, and the 18–month "continuation coverage" obligation would have expired on January 31, 1994. The Burgesses were actually covered by Adams' health care plan on the same terms as eligible employees from July 31, 1992 through January 31, 1994.[3] Thus, the coverage provided to the Burgesses comports with COBRA's statutory requirements. In fact, the actual cost to the plaintiffs was significantly less than it would have been if Adams had required plaintiffs to bear the costs for continuation coverage permissible under COBRA.[4]

## IV. MULTIPLE QUALIFYING EVENTS RULE

■ Plaintiffs claim that Mr. Burgess' resignation effective November 30, 1993 was a second qualifying event triggering COBRA eligibility and claim entitlement to 18 months of continuation coverage effective from that date. 29 U.S.C. § 1162(2)(A)(ii) and 26 U.S.C. § 4980B(f)(2)(B)(i)(II) provide the limited circumstances under which a qualified beneficiary is entitled to additional coverage because of the occurrence of multiply qualifying events:

> If a qualifying event ... occurs during the 18 months after the date of a qualifying event described in section 1163(2) of this title, [the coverage must be extended to] the date which is 36 months after the date of the qualifying event described in section 1163(2) of this title.

29 U.S.C. § 1162(2)(A)(ii).

29 U.S.C. § 1163(2) provides that "the termination ... or reduction of hours, of the covered employee's employment" is a qualifying event. There can be little doubt that a termination that occurs without a prior reduction of hours is a qualifying event. In the present situation, however, Mr. Burgess experienced a qualifying event as described in § 1163(2) when he first began working re-

duced hours in 1992, and the Court must determine whether a termination subsequent to a reduction in hours can be considered a qualifying event such that the multiple qualifying events rule is applicable.

Requirements for continuation coverage as a result of an employee's termination and reduction in hours are discussed within the same numerical subsection. 29 U.S.C. § 1163(2); 26 U.S.C. § 4980B(f)(3)(B). Each other qualifying event is individually set forth and separately numbered. Thus, the Court construes an employee's termination or reduction in hours as a single qualifying event. Inasmuch as Mr. Burgess experienced a qualifying event as a result of his reduction in hours, he cannot claim a second qualifying event resulting from his termination.

■ The Court's construction of this language is supported by the legislative purpose of COBRA and the language of the the multiple qualifying events rule. The legislative purpose of COBRA is to provide transition health care benefits to employees who suddenly become ineligible for health care benefits. In this case, the "sudden ineligibility" occurred when Mr. Burgess began working reduced hours and thus became ineligible for health care benefits under the terms of the health care plan. His resignation, while close in time to the date his health care actually ended, was more than 16 months after the onset of his ineligibility for health benefits under the Adams plan.

In addition, the very language of the multiple qualifying events rule suggests that the rule was intended to address the situation where an individual experiences a qualifying event described in the other subsections of § 1163 after the occurrence of either a termination or reduction in hours. The rule provides "if a qualifying event ... occurs during the 18 months after the date of a qualifying event described in section 1163(2)...."[5]

---

3. Adams provided two additional months of coverage on differing terms and at a greater cost.

4. The Burgesses paid $122.12 per month from July 1, 1992 to November 30, 1993, and $355.00 per month from December 1, 1993 to March 28,

1994. Under COBRA's terms, Adams could have charged 102% of the actual cost of the insurance.

5. A qualifying individual who has suffered ineligibility of benefits because of termination or reduction in hours is entitled 18 months of continuation coverage. 29 U.S.C. § 1162(2)(A)(i). For

The rule specifically addresses § 1163(2) as the prior event, and logically applies only to the other individually numbered qualifying events defined in § 1163.[6]

Accordingly, the Court finds that the plaintiffs are not entitled to 18 months continuation coverage from the date of Mr. Burgess' termination, as his termination was not a second qualifying event.[7]

## V. COBRA NOTICE REQUIREMENTS

 Plaintiffs also contend that Adams failed to provide them notice of their COBRA rights and claim entitlement to damages and statutory penalties. Defendants do not dispute the fact that no COBRA notice was provided to plaintiffs. Instead, defendants claim that providing alternative continuation coverage eliminated the notice requirement. The notification requirements of COBRA are clear: an employer must notify the administrator of the group health care plan within 30 days. 29 U.S.C. § 1166(a)(2). The administrator has 14 days from notification to provide notice to the qualified beneficiary of the right to elect continuation coverage.[8] *Id.* § 1166(a)(4); *Id.* § 1166(c). Existing case-law makes it equally clear that notice must be provided to all qualifying beneficiaries and not just to the employee. *Brown v. Neely Truck Line, Inc.*, 884 F.Supp. 1534, 1540 (M.D.Ala.1995); *Mlsna v. Unitel Communications, Inc.*, 825 F.Supp. 862 (N.D.Ill.1993).

 In the stipulated facts, the parties agree that Adams was the employer, plan sponsor and plan administrator at all times relevant to the disposition of this case. Because Adams was the administrator and the sponsor of the plan, it had an affirmative duty to provide COBRA notice to both Mr. and Mrs. Burgess regarding their right to elect continuation coverage within 14 days. Even when Mr. Burgess' reduction in hours is construed in the light most favorable to defendants and considered to have occurred on June 30, 1992, the Burgesses should have been provided individual notice not later than July 14, 1992.[9] The Burgesses did not receive this notice as required by COBRA. An employer's lack of notice is not a basis for extending COBRA's 18–month continuation coverage period, but may result in the assessment of damages or civil penalties. See *DiSabatino v. DiSabatino Brothers, Inc.*, 894 F.Supp. 810 (D.Del.1995).

Civil penalties in an amount of up to One Hundred Dollars ($100) per day may be assessed against the plan administrator for failure to comply with COBRA's notification requirements. 29 U.S.C. § 1132(c)(1). Because the defendants did not provide the notice required by § 1166(a)(1), they violated COBRA's notice requirements, and the Court must determine whether penalties under § 1132(c) are appropriate in this case.

The Sixth Circuit's decision in *Bartling v. Fruehauf Corp.*, 29 F.3d 1062 is instructive. In the *Bartling* decision, the district court refused to impose the statutory penalty on

---

death of the covered employee, divorce or legal separation from the covered employee, covered employee's entitlement to Medicare or a dependant child's emancipation, the coverage requirement is 36 months. 29 U.S.C. § 1162(2)(A)(iv).

6. If the rule were applied otherwise, the resulting coverage would be at odds with other COBRA provisions. For example, if the Court were to construe Mr. Burgess' subsequent termination as a second qualifying event, the Burgesses would be entitled to 36 months of continuation coverage from the date of his loss of coverage in 1992. Using the date most favorable to the plaintiffs as the Court has consistently done, the Burgesses would be entitled to continuation coverage until July 30, 1995. If, however, Mr. Burgess' termination on November 30, 1993 had not been proceeded by the reduction in hours, the Burgesses would only be entitled to coverage through May 30, 1995.

7. Even if the Court had found the termination constituted a qualifying event, the continuation coverage would have lasted 36 months from the onset of the first qualifying event and not 18 months from the date of the second qualifying event.

8. This time period may be longer if the plan is a multi-employer group health care plan and the plan so provides. 29 U.S.C. § 1166(c).

9. The Burgesses also contend that they should have received COBRA notice after Mr. Burgess' resignation on November 30, 1993. The Court has determined that the resignation was not a "qualifying event;" thus, COBRA notice was unnecessary.

the defendants for their failure to disclose requested documents in a timely manner as required by 29 U.S.C. § 1132(c)(1)(B). On appeal, the Sixth Circuit affirmed the district court's refusal. The court noted that "[m]any courts have refused to impose any penalty at all under § 1132(c)(1) in the absence of a showing of prejudice or bad faith." *Id.* at 1068–69 (citing *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 588–589 (1st Cir.1993); *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 328–29 (5th Cir.1992)).

In this case, plaintiffs were provided health care for 18 months under terms more favorable than required by COBRA. Because the failure to provide notice does not extend the continuation period and plaintiffs were provided with health care coverage during the relevant period, the Court finds that plaintiffs have suffered no damages. In fact, there is no evidence of any prejudice resulting from defendants' failure to provide notice of COBRA eligibility to plaintiffs. Moreover, there has been no showing that defendants acted in bad faith. Accordingly, the Court declines this opportunity to impose the statutory penalty on defendants.

## VI. CONCLUSION

For the reasons more fully discussed above, the Court **AWARDS JUDGMENT** in favor of defendants.