Alison M. MYERS, Plaintiff,

v.

TODD'S HYDROSEEDING & LAND-SCAPE, L.L.C. and Todd's Services, Inc. A Michigan corporation, Defendants, jointly and severally.

No. 03–74082.

United States District Court,
E.D. Michigan,
Southern Division.

May 5, 2005.

A. Poppy Goudsmit, William G. Tishkoff, Tishkoff & Goudsmit (Ann Arbor), Ann Arbor, MI, Plaintiff Counsel.

Donald A. Van Suilichem, Van Suilichem Assoc., Bloomfield Hills, MI, Neil D. Nielson, Nielson, Brown, Brighton, Defendant Counsel.

## OPINION AND ORDER

FEIKENS, District Judge.

Defendants move for summary judgment on all six counts brought against them by Plaintiff Myers (now Beauregard). There are two hostile work environment claims (one under state and one under federal law), two disparate treatment claims (again, one federal and one state), and two ERISA claims (a violation of notification requirements, and a violation of disclosure requirements). Plaintiff cross-moves for summary judgment on the ERISA claims. For the reasons below, I GRANT Defendant's Motion for Summary Judgment, and DENY Plaintiff's cross-motion for summary judgment.

## I. FACTUAL BACKGROUND

Plaintiff was employed as a bookkeeper/receptionist for both Defendant companies, which are owned and operated by the LaButte family. Todd LaButte is the primary manager and owner, and his brother Kurt and sister Sherry LaButte–Birk both work for the company. Plaintiff began work for the companies on April 9, 2001, and her last day of work was October 22, 2002. Because each set of claims pertains to a particular set of facts, and there is not

a clear chronology of all relevant occurrences, I discuss the facts pertinent to each claim in the analysis section below.

## II. ANALYSIS

### A. *Motion for Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the evidence and any inferences drawn from the evidence in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted), *Redding v. St. Eward,* 241 F.3d 530, 532 (6th Cir.2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The trial court has some discretion to determine whether the respondent's claim is plausible. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087–8 (6th Cir.1996). *See also, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

### B. *Hostile Work Environment*

█ Plaintiff alleges that Defendants created a hostile work environment in violation of Michigan's Elliott–Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101, and Title VII, which use the same evidentiary framework. *Humenny v. Genex Corp.* 390 F.3d 901 (6th Cir.

2004). Determining whether a workplace is a hostile environment requires examining the totality of circumstances, including, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create that unreasonable interference. *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). To sum up the high bar that Plaintiff must clear regarding the pervasiveness and severity of the complained-of conduct, in *Black v. Zaring Homes,* 104 F.3d 822 (6th Cir.1997), *cert. denied* 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114, the court stated:

> "Although the verbal comments were offensive and inappropriate, and the record suggests that defendant's employees did not always conduct themselves in a professional manner, Title VII was not designed to purge the workplace of vulgarity."

█ Plaintiff alleges the following seven occurrences to support her claim of a hostile working environment: (1) references in Plaintiff's presence to "big boobs," "panty lines," and "G-strings" as part of sexual statements or jokes; (2) references in Plaintiff's presence to the size of genitals as part of a sexual joke; (3) touching of Plaintiff on the shoulders by employee Mike Butler; (4) three comments made by Todd LaButte: "you have aged well", "you are very pretty", and "you have a nice figure"; (5) Todd LaButte's directions to Plaintiff to call him from her home, and his directions to take a call in a conference room instead of at her desk; (6) massaging

the shoulders of another female employee in Plaintiff's sight; and (7) Todd LaButte's asking another employee to come to his house when his girlfriend was away. (Pl.'s Br. in Resp. at 4.)

Even taking all these events into account and assuming Todd LaButte asked Plaintiff to have sexual relations with him, the totality of the circumstances fails to legally constitute a hostile work environment, because it is neither pervasive enough or severe enough to qualify. In an illustrative case, the Sixth Circuit held that even an employer's alleged request for sexual favors from an employee in exchange for a better evaluation, combined with calling that employee "Hot Lips," commenting about her state of dress, and telling dirty jokes, did not create a hostile working environment as a matter of law. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir.2000), cited by *Valentine–Johnson v. Roche*, 386 F.3d 800, 813–4 (6th Cir.2004). If the circumstances in *Morris* (which were much more severe, including a *quid pro quo* proposition) did not constitute a hostile work environment, then neither do these alleged circumstances. Although Plaintiff found the isolated incidents she describes offensive, making all inferences in her favor, the overall conduct is not pervasive or severe enough to allow a reasonable jury to find in her favor on this claim. Therefore, I GRANT Defendants' Motion for Summary Judgment on both the state and federal hostile work environment claims.

### C. Disparate Treatment

Plaintiff alleges that Defendants discriminated on the basis of her gender in violation of Michigan's Elliott–Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101, and Title VII, which use the same evidentiary framework. *Humenny v. Genex Corp.* 390 F.3d 901 (6th Cir. 2004). To make out a prima facie case for gender discrimination, a plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct. *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir.1999). For the reasons explained below, Plaintiff cannot prevail on this claim because (most notably) she fails to meet her burden on the second prong.

■■■ To satisfy the second prong, Plaintiff alleges that she was constructively discharged from her employment on October 22, 2002. A constructive discharge requires a determination that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529, 533–4 (6th Cir. 2004), citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982). In other words, a constructive discharge occurs only if a reasonable woman in the plaintiff's shoes would find the working conditions objectively intolerable. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir.1987). The Sixth Circuit has a two-prong test for a finding of constructive discharge. First, the employee must allege "aggravating factors" beyond the "[p]roof of discrimination alone." *Geisler v. Folsom*, 735 F.2d 991, 996 (6th Cir. 1984). Second, the court must make some inquiry into the employer's intent and the reasonably foreseeable impact of its conduct on the employee. *Yates*, 819 F.2d at 637, citing *Easter v. Jeep Corp.*, 750 F.2d 520, 522 (6th Cir.1984); *Held*, 684 F.2d at 432.

■■■ All the facts that follow are as Plaintiff relates them in her deposition. The day after Plaintiff had a conversation

with Todd LaButte that she interpreted as a request for sex, she did not come to work. Instead, she phoned her supervisor, LaButte–Birk, and told her about the conversation. LaButte–Birk asked Plaintiff to phone back at 4 p.m., which would give LaButte–Birk a chance to talk to the part-owner of the companies, Kurt LaButte (Todd's brother), about the situation. (Pl's Dep. at 154–7.) Though LaButte–Birk and Kurt LaButte both called and left messages on Plaintiff's answering machine later that day and for several days thereafter, Plaintiff never returned any of those calls or appeared in the office again. (Id. at 34–5, 158–61.) Plaintiff initially felt that she could go return to work, but sometime after she called LaButte–Birk, Plaintiff decided that "I could not go back and sit in an office with Todd every day right across from me knowing what he wanted from me. It was very hard for me and I didn't know how they could take care of it." (Id. at 160.)

Objectively speaking, even if Todd La-Butte did make a request for sexual favors from Plaintiff, a reasonable woman would not find continued employment there intolerable (nor did Plaintiff, at least initially). By her own admission, Todd LaButte never made a quid pro quo proposition. (Pl.'s Dep. at 142.) She does not allege that Todd LaButte repeated the request after she turned him down. (Id. at 143.) Plaintiff gave her employers no opportunity to take any action rectifying the situation. Seen in the light most favorable to Plaintiff, this does not rise to an objectively intolerable situation.

Moreover, Defendants could not have known that a single phone call, lacking even a quid pro quo statement, would have this kind of impact on an employee. Where an employee failed to return to work and made no attempt to contact her employer for an explanation for the allegedly offensive conduct, the Sixth Circuit

held that no constructive discharge occurred, because the plaintiff's behavior "was not reasonable." Yates, 819 F.2d at 637. Plaintiff's conduct here is equally unreasonable. Therefore, I GRANT Defendants' Motion for Summary Judgment on the disparate impact claims.

## C. ERISA Notification and Disclosure Requirements

The parties dispute whether the 29 U.S.C. § 1169 notifications and 29 U.S.C. § 1024(b)(2) disclosures were provided to Plaintiff and whether they were complete. However, it is unnecessary to parse these legal and factual arguments, because I would not exercise my discretion to award any damages even if I accepted all of Plaintiff's factual assertions.

█ The district court has discretion to award a plaintiff monetary damages for a violation of these reporting requirements. See 29 U.S.C. § 1132(c)(1); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir.1993) (rejecting flatly the assertion that " '[t]he $100–per–day penalty of 29 U.S.C. § 1132(c)(1) must be imposed for failure to produce documents on request.' ") In determining whether to assess a penalty, courts have considered factors such as the administrator's bad faith or intentional conduct, the length of the delay in providing the information, the number of requests made and documents withheld, and any prejudice to the participant or beneficiary. See Ziaee v. Vest, 916 F.2d 1204 (7th Cir.1990).

█ Plaintiff fails to allege any prejudice from Defendants' allegedly illegal actions. According to Plaintiff, during the time she was without health insurance, she had no physical problems for which she needed medical attention. (Pl.'s Dep. 43.) She saw her own doctor once during that time, and paid the same amount for the medical care that she had paid while work-

ing for Defendants under the group insurance coverage. (*Id.* at 43–5.) She now has health insurance from her new employer, and while the coverage costs $13 more a week than the plan she had with Defendants, she also receives dental coverage that was not provided under Defendants' plan. (*Id.* at 47–8.) While it is not necessary for Plaintiff to allege damages to state a claim for failure to notify or disclose under ERISA, this factor is important in determining what penalty should accrue. *See Lesman v. Ransburg Corp.*, 719 F.Supp. 619, 622 (W.D.Mich. 1989), *aff'd without opinion*, 911 F.2d 732 (6th Cir.1990) (prejudice not a prerequisite but court may consider detrimental reliance or prejudice before imposing penalties); *Burgess v. Adams Tool & Eng'g, Inc.*, 908 F.Supp. 473 (W.D.Mich.1995) (no penalty assessed for failure to comply with notice requirements, since the plaintiffs suffered no damages).

Furthermore, Plaintiff bears a large part of the blame for the alleged length of delay in receiving the notices and disclosures. Employees who cease their employment usually communicate their resignation to their employer, whether in person, by letter, or by phone. Here, when Plaintiff stopped showing up for work, Plaintiff's employer left repeated phone messages over several days, which Plaintiff chose not to return. Plaintiff did not come by to clean out her desk, return her keys, or pick up her last paycheck. Therefore, I think it was unusually difficult for her employer to determine that a "qualifying event" had occurred, much less to ensure all proper procedures were followed. *See* LaButte–Birk's Dep. at 53 ("Generally I don't send COBRA notices out because the person is sitting right in front of me and we sign it together"). Finally, Plaintiff admits she received a notice of cancellation of her health insurance, but never contacted either her employer or the company with any questions or requests for documents before obtaining legal counsel for this suit. (Pl.'s Dep. 223, 227); *compare Garred v. Gen. Am. Life Ins. Co.*, 774 F.Supp. 1190 (W.D.Ark. 1991).

Even if I accepted all of Plaintiff's allegations, therefore, I would not exercise my discretion to award Plaintiff any statutory damages for the two ERISA counts, because such an award would not be just. For that reason, I GRANT Defendants' Motion for Summary Judgment and DENY Plaintiff's Cross–Motion for Summary Judgment on both ERISA counts.

## CONCLUSION

For the reasons above, I GRANT summary judgment on all counts in favor of Defendants, and I DENY Plaintiff's cross-motion for summary judgment on the ERISA counts.

**IT IS SO ORDERED.**